## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

FREEDOM PATH, INC.,     )
                          )
      Plaintiff,         )
                          )
      v.               )     No. 1:20-cv-01349 (KBJ)
                          )
INTERNAL REVENUE SERVICE, et al.,     )
                          )
      Defendants.     )
_____)

## REPLY IN SUPPORT OF DEFENDANTS'
## CROSS-MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................... 1

BACKGROUND .................................................................................................... 2

    I.  The IRS never conceded that Freedom Path spent *at most* 39% of its annual
expenditures on express campaign advocacy .................................................. 2

    II. Freedom Path mischaracterizes prior proceedings and statements about the IRS's past
conduct.............................................................................................................. 3

ARGUMENT ......................................................................................................... 5

    I.  The Court should make a *de novo* determination of Freedom Path's qualification for
§ 501(c)(4) status based on the administrative record ........................................ 5

    II. Freedom Path is not entitled to § 501(c)(4) tax-exempt status ..................................... 6

        A.Congress did not acquiesce in allowing non-profit organizations to retain § 501(c)(4)
status while engaging in substantial non-exempt activities ........................................... 6

            1. Congress did not express any awareness or approval of a numerical primary
purpose test in § 501(c)(4) when it created § 527................................................... 7

            2. Congress did not amend § 501(c)(4) by enacting § 527(f)(3) ........................... 8

            3. The IRS's practices do not support Freedom Path's congressional acquiescence
argument ................................................................................................. 9

        B. No court has ever held that a non-profit organization that spends 49% of its
resources on non-exempt purposes is entitled to § 501(c)(4) status ............................ 11

            1. Courts have routinely rejected a numerical primary purpose test.................... 12

            2. None of Freedom Path's cited cases hold that § 501(c)(4) status turns on a
numerical "primary purpose test" ........................................................ 14

        C. Political campaign intervention does not promote social welfare........................... 15

    III.     Although the Court need not reach the constitutionality of Revenue Ruling 2004-6,
it survives Freedom Path's constitutional challenge....................................... 17

        A.Plaintiff's argument has not improved since its earlier loss on the issue of vagueness,
and Plaintiff fails to show that any supposed vagueness in the Revenue Ruling made a
difference in its own case............................................................................ 17

i

B. The terms of this tax subsidy do not make it a tool for the suppression of disfavored ideas, so the Revenue Ruling does not raise First Amendment concerns and is only subject to a lenient review for vagueness ................................................................. 18

C. Plaintiff's untimely "freedom of association" argument likewise fails because conditions on seeking a tax subsidy do not "force" it to make any disclosures ........... 24

CONCLUSION.................................................................................................................. 25

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Agency for Int'l Dev. v. Alliance for Open Soc'y Int'l, Inc.*,
　570 U.S. 205 (2013)..................................................................................21, 24

*Am. Ass'n of Christian Sch. Voluntary Employees Beneficiary Ass'n Welfare Plan
　v. United States*,
　850 F.2d 1510 (11th Cir. 1988) .........................................................................13

*Am. Atheists, Inc. v. Shulman*,
　21 F. Supp. 3d 856 (E.D. Ky. 2014) ....................................................................9

*Am. Campaign Acad. v. Comm'r*,
　92 T.C. 1053 (1989)...........................................................................................16

*Ashcroft v. Free Speech Coal.*,
　535 U.S. 234 (2002).............................................................................................19

*Auto. Club of Mich. v. Comm'r*,
　353 U.S. 180 (1957).............................................................................................10

*Baggett v. Bullitt*,
　377 U.S. 360 (1964).............................................................................................24

*Bantam Books, Inc. v. Sullivan*,
　327 U.S. 58 (1963)...........................................................................................23-24

*Basic Unit Ministry of Alma Karl Schurig v. Comm'r*,
　670 F.2d 1210 (D.C. Cir. 1982)............................................................................5

*Becker v. Comm'r*,
　751 F.2d 146 (3d Cir. 1984)................................................................................10

*Better Bus. Bureau of Washington, D.C., v. United States*,
　326 U.S. 279 (1945)..................................................................................1, 6, 11

*Big Mama Rag, Inc. v. United States*,
　631 F.2d 1030 (D.C. Cir. 1980)..............................................................21, 22, 23

*Bingler v. Johnson*,
　394 U.S. 741 (1969)..............................................................................................9

*Bismullah v. Gates*,
　551 F.3d 1068 (D.C. Cir. 2009)............................................................................7

*Buckley v. Valeo*,
    424 U.S. 1 (1976)...................................................................................................18

*Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*,
    467 U.S. 837 (1984)...............................................................................................16

*Citizen Awareness Project, Inc. v. I.R.S.*,
    No. 13-cv-2127-WJM-NYW, 2015 WL 2155723 (May 6, 2015)...........................4

*Citizens Union of City of New York v. Att'y Gen. of New York*,
    408 F. Supp. 3d 478 (S.D.N.Y. 2019)....................................................................14

*Contracting Plumbers Co-op. Restoration Corp. v. United States*,
    488 F.2d 684 (2d Cir. 1973)..........................................................................6, 8, 13

*Cramp v. Board of Pub. Instr. Of Orange Cty. Fla.*,
    368 U.S. 278 (1961)...............................................................................................24

*Davenport v. Washington Educ. Ass'n*,
    551 U.S. 177 (2007)...............................................................................................22

*Democratic Leadership Council, Inc. v. United States*,
    542 F. Supp. 2d 63 (D.D.C. 2008) ........................................................................15

*Dickman v. Comm'r*,
    465 U.S. 330 (1984)...............................................................................................10

*F.C.C. v. Fox Television Stations, Inc.*,
    567 U.S. 239 (2012).........................................................................................19, 23

*F.C.C. v. Pacifica*,
    438 U.S. 726 (1978)...............................................................................................19

*F.E.C. v. Beaumont*,
    539 U.S. 146 (2003)...............................................................................................14

*Fed. Deposit Ins. Corp. v. Philadelphia Gear Corp.*,
    476 U.S. 426 (1986).................................................................................................6

*Finley v. Nat'l Endowment for the Arts*,
    100 F.3d 671 (9th Cir. 1996) .................................................................................23

*Stand up for California! v. U.S. Dep't of the Interior*,
    204 F. Supp. 3d 212 (D.D.C. 2016)..................................................................15, 24

*Food Marketing Institute v. Argus Leader Media*,
    139 S. Ct. 2356 (2019).............................................................................................9

*Forest Grove Sch. Dist. v. T.A.*,
    557 U.S. 230 (2009) ..........................................................................................8

*Freedom Path, Inc. v. I.R.S.*,
    2017 WL 2902626 (N.D. Tex. July 7, 2017) ...................................................17

*Freedom Path, Inc. v. I.R.S.*,
    913 F.3d. 503 (5th Cir. 2019) .........................................................................17

*Fund for the Study of Econ. Growth & Tax Reform v. I.R.S.*,
    161 F.3d 755 (D.C. Cir. 1998) ......................................................................5, 9

*Gen. Am. Transp. Corp. v. I.C.C.*,
    872 F.2d 1048 (D.C. Cir. 1989) .......................................................................7

*Grayned v. City of Rockford*,
    408 U.S. 104 (1972) ........................................................................................19

*Harris v. McRae*,
    488 U.S. 297 (1980) ........................................................................................20

*Harrison v. I.R.S.*,
    No. 20-CV-828 (CRC), 2021 WL 930266 (D.D.C. Mar. 11, 2021) ...............11

*Holder v. Humanitarian Law Project*,
    561 U.S. 1 (2010) ............................................................................................17

*INDOPCO, Inc. v. Comm'r*,
    503 U.S. 79 (1992) ............................................................................................9

*Keyishian v. Bd. of Regents of Univ. of State of N.Y.*,
    385 U.S. 589 (1967) ........................................................................................24

*Leathers v. Medlock*,
    499 U.S. 439 (1991) ........................................................................................24

*Manning Ass'n v. Comm'r*,
    93 T.C. 596 (1989) ..........................................................................................14

*Mayo Found. for Med. Educ. & Rsch. v. United States*,
    562 U.S. 44 (2011) ..........................................................................................16

*Maze v. I.R.S.*,
    862 F.3d 1087 (D.C. Cir. 2017) .....................................................................11

*Metro. Washington Ch. v. D.C.*,
    57 F. Supp. 3d 1 (D.D.C. 2014) ......................................................................19

*Meyers v. Comm'r*,
    68 T.C.M. (CCH) 1354 (T.C. 1994) ...................................................................10

*Minnesota Voters Alliance v. Mansky*,
    138 S. Ct. 1876 (2018) .........................................................................19, 23

*Mobile Republican Assembly v. United States*,
    353 F.3d 1357 (11th Cir. 2003) ......................................................................25

*Monterey Public Parking Corp. v. United States*,
    481 F.2d 175 (9th Cir. 1973) .........................................................................15

*Mueller v. Allen*,
    463 U.S. 388 (1983)................................................................................22

*Mut. Aid Ass'n of Church of the Brethren v. United States*,
    759 F.2d 792 (10th Cir. 1985) ...................................................................12, 13

*Nat'l All. v. United States*,
    710 F.2d 868 (D.C. Cir. 1983) ...................................................................2, 5, 6

*Nat'l Endowment for the Arts v. Finley*,
    524 U.S. 569 (1998)................................................................................23

*Nationalist Movement v. Comm'r*,
    102 T.C. 558 (1994)................................................................................12

*New York v. E.P.A.*,
    413 F.3d 3 (D.C. Cir. 2005)...........................................................................7

*NonBelief Relief, Inc. v. Rettig*,
    No. CV 18-2347 (TJK), 2020 WL 122974 (D.D.C. Jan. 10, 2020)..........................9

*Ocean Pines Ass'n, Inc. v. Comm'r*,
    672 F.3d 284 (4th Cir. 2012) .........................................................................14

*People's Educ. Camp Society, Inc. v. Comm'r*,
    39 T.C. 756 (1963).................................................................................15

*Perry v. Sindermann*,
    408 U.S. 594 (1972)................................................................................20

*Police Benev. Ass'n of Richmond, Va. v. United States*,
    661 F. Supp. 765 (E.D. Va.), *aff'd*, 836 F.2d 547 (4th Cir. 1987) (per curiam).....................13

*Polm Family Found., Inc. v. United States*,
    655 F. Supp. 2d 125 (D.D.C. 2009), *aff'd*, 644 F.3d 406 (D.C. Cir. 2011).............................5

*Rapanos v. United States*,
    547 U.S. 715 (2006) .................................................................................................7

*Regan v. Taxation with Representation of Washington*,
    461 U.S. 540 (1983) ....................................................................................... *passim*

*Rust v. Sullivan*,
    500 U.S. 173 (1991) .........................................................................................21, 24

*Schuster v. Comm'r*,
    800 F.2d 672 (7th Cir. 1986) ..................................................................................10

*Smith v. People of the State of California*,
    361 U.S. 147 (1959) ...............................................................................................19

*Solid Waste Agency of N. Cook Cty. v. U.S. Army Corps of Engineers*,
    531 U.S. 159 (2001) .................................................................................................7

*Speiser v. Randall*,
    357 U.S. 513 (1958) ...........................................................................20, 22, 23, 24

*Taxation With Representation of Washington v. Regan*,
    676 F.2d 715 (D.C. Cir. 1982) ..............................................................................23

*True the Vote, Inc. v. I.R.S.*,
    831 F.3d 551 (D.C. Cir. 2016) ...........................................................................3, 4

*United States v. Lee*,
    455 U.S. 252 (1982) ...............................................................................................18

*United States v. Rowlee*,
    899 F.2d 1275 (2d Cir. 1990) .................................................................................18

*Util. Air Regul. Grp. v. E.P.A.*,
    573 U.S. 302 (2014) ...............................................................................................13

*Vill. Of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*,
    455 U.S. 489 (1982) ...............................................................................................19

*Virginia Pro. Standards Rev. Found. v. Blumenthal*,
    466 F. Supp. 1164 (D.D.C. 1979) ............................................................................5

**Statutes**

26 U.S.C. § 501(c)(3) ..................................................................................... *passim*

26 U.S.C. § 501(c)(4) ..................................................................................... *passim*

26 U.S.C. § 527 ............................................................................................... *passim*

26 U.S.C. § 7805 ...................................................................................................10, 16

**Other Authorities**

26 C.F.R. § 1.501(c)(4)-1(a)(2) ......................................................................6, 7, 16

78 FR 71535-01 ..............................................................................................................12

Fed. R. Evid. 408 ..........................................................................................................4

H.R. Rep. No. 391, 100th Cong., 1st Sess. 1621, 1625 (1987) ..........................16

T.D. 6391, 1959-2 C.B. 139, 1959 WL 68478 (1959).....................................16

Smolla & Nimmer on Freedom of Speech, § 19:9........................................22

## PRELIMINARY STATEMENT

The Court should deny Freedom Path's request for § 501(c)(4) status because Freedom Path failed to meet its burden to prove it "operate[s] exclusively for the promotion of social welfare." 26 U.S.C. § 501(c)(4). Defendants have analyzed the administrative record and shown that Freedom Path dedicated *at least* 84% of its direct expenditures[1] to supporting then-Senator Orrin Hatch's 2012 primary campaign. Even if the Court limited itself to Freedom Path's FEC filings, Freedom Path *still* could not qualify for § 501(c)(4) status because at least 39% of its direct expenditures still would be political campaign intervention. Groups like Freedom Path that are so substantially engaged in activities for non-exempt purposes do not operate "exclusively" to promote social welfare under any reasonable construction of that word—particularly under *Better Bus. Bureau of Washington, D.C., v. United States*, 326 U.S. 279, 283 (1945) ("exclusive" means a single substantial non-exempt purpose will destroy exemption).

Freedom Path neither addresses the record evidence nor proves up a different amount of social-welfare activity. Instead, it incorrectly claims that the Government "concede[d] that Freedom Path spent at most '39%' of its annual expenditures on express advocacy." Pl's Resp. at 36. Freedom Path then makes the extraordinary contention that it is entitled to tax-exempt status because by enacting § 527, Congress purportedly acquiesced to allowing § 501(c)(4) organizations to direct up to 49% of their activities towards non-exempt purposes.

In the alternative, Freedom Path argues for the first time that it qualifies for § 501(c)(4) status *no matter* how much it spent to support Hatch's primary campaign on the theory that political speech promotes social welfare. Pl's Resp. at 11. Freedom Path dedicates the rest of its response to renewed constitutional attacks on IRS guidance, allegations of IRS misconduct, and

---

[1] "Direct expenditures" refers to the amounts Freedom Path spent on its main activities – communications through advertisements and mailers. *See* Gov't Memo at 12.

asserting that § 527's donor disclosure obligations—which are not at issue in this suit—violate the First Amendment's guarantee of free association.

Still missing is any proof in the administrative record that it promoted social welfare (exclusively or otherwise). Moreover, the IRS's § 501(c)(4) regulations foreclose Freedom Path's novel contention that § 501(c)(4) organizations can directly engage in extensive (even unlimited) political campaigning.

And though the Court need not reach them, Freedom Path's constitutional arguments collapse the distinction between rules punishing speech and rules for providing subsidies of speech. Now (belatedly) Plaintiff even contends that its inability to get a federal tax exemption for substantial political activity (without disclosing its donors) threatens its "freedom of association." Freedom Path blazes First Amendment trails never trod by the Supreme Court.

Given the record, the Court need not address most of Plaintiff's arguments. *Cf. Nat'l All. v. United States*, 710 F.2d 868, 871 (D.C. Cir. 1983) ("the appropriate first step is to examine the [group's] materials to determine whether they could in any event qualify as [tax-exempt] within the exemption statute."). On reviewing the record *de novo*, the Court should deny Freedom Path's motion, grant the Government's cross-motion, and hold that Freedom Path has not shown that it qualifies for § 501(c)(4) tax-exempt status.

## BACKGROUND

Before addressing those issues, it is necessary to correct two misstatements in Freedom Path's Response/Reply.

### I.    The IRS never conceded that Freedom Path spent *at most* 39% of its annual expenditures on express campaign advocacy

Freedom Path wrongly asserts that the IRS has conceded that Freedom Path's "express advocacy" spending was no more than 39% of its direct expenditures. Pl's Resp. at 36-37, 41.

Freedom Path similarly insinuates that the Government agrees that Freedom Path's political advertisements automatically constitute non-campaign issue advocacy (or automatically promote social welfare) as long as the advertisement did not state the equivalent of "Vote for Hatch." *See id.* at 41 (wrongly asserting that "DOJ does not contend that any of Freedom Path's non-express advocacy speech is the functional equivalent of express advocacy").

Defendants have never conceded those points. To the contrary, the Government's opening brief spent nearly eight pages (23-30) showing that at least 84% of Freedom Path's communications expenditures (which constituted nearly all Freedom Path's activities) were designed to help then-Senator Hatch prevail in the 2012 Utah Republican primary.[2] Freedom Path never contests that showing. Indeed, the administrative record shows that Freedom Path operated predominantly to assist Hatch's election prospects, not to promote social welfare.

## II. Freedom Path mischaracterizes prior proceedings and statements about the IRS's past conduct

Freedom Path is wrong when it asserts, Pl's Resp. at 22-24, that prior proceedings have found that the IRS has engaged in intentional viewpoint discrimination in applying Revenue Ruling 2004-6. The allegations of viewpoint discrimination in that controversy concerned the IRS's selection of organizations for additional review, and *not* use (or misuse) of the Revenue Ruling. *See Freedom Path I*, at Doc. 49-1 (Amended Complaint); *True the Vote, Inc. v. I.R.S.*, 831 F.3d 551, 556 (D.C. Cir. 2016). The TIGTA investigation also was directed to selection criteria, not the Revenue Ruling. None of that is evidence that the IRS used the Revenue Ruling as a vehicle for discrimination in reviewing Freedom Path's application, or more generally.

---

[2] Virtually *all* Freedom Path's activities consisted of either praising Hatch, denigrating Hatch's 2012 primary opponent (sometimes through the veneer of the issues that defined his opponent), or reminding Utahns of Hatch's policy positions and conservative bona-fides. Much of that activity occurred in the runup to the Utah 2012 Republican primary. The administrative record also shows that Freedom Path rebuffed the IRS's requests for more information that would have shed light on Freedom Path's social welfare activities (or lack thereof).

In any event, Freedom Path obtained no judicial finding of viewpoint discrimination in its prior case. The parties settled Freedom Path's viewpoint discrimination claim (Count IV) by dismissing it, with no further relief related to that count. *See Freedom Path I*, Docs. 49-1 (Amended Compl. Count IV), 103 (Stipulation of Dismissal), 106 (Final Judgment). Freedom Path obtained no admission of intentional unconstitutional treatment as part of that settlement or otherwise; indeed, it obtained no declaratory relief at all as part of the settlement, and declaratory relief is the only relief it requested for that count.[3] The United States paid to resolve Freedom Path's damages claim in that prior suit, but that claim alleged that the IRS had wrongfully disclosed certain return information. It did not involve the Revenue Ruling.[4]

Freedom Path's citation of language in *True the Vote* fails to tell the full story. The D.C. Circuit reviewed jurisdictional and failure-to-state-a-claim arguments on a motion to dismiss. *True the Vote*, 831 F.3d at 554. Any purported findings of intentional unconstitutional conduct was dicta and without the benefit of discovery or any vehicle that had placed those issues before the court. More importantly, an independent watch-dog agency concluded, after an extensive investigation, only that the IRS's selection of applications for review based on applicants' names and policy positions "*gives the appearance* that the IRS is not impartial in conducting its mission." TIGTA, "Inappropriate Criteria Were Used to Identify Tax-Exempt Applications for Review," https://perma.cc/2TF7-UVWZ (May 14, 2013) at 6 (emphasis added). TIGTA made no finding of intentional discrimination against conservative groups.[5] And it later concluded the IRS

---

[3] Even so, a settlement does not establish the validity of the settled claim. *See* Fed. R. Evid. 408.

[4] In another case by a different group, but seeking damages for the same disclosure to ProPublica that was at issue in Freedom Path's prior case, the court ruled, as a matter of law, that the disclosure did not result from gross negligence. *Citizen Awareness Project, Inc. v. I.R.S.*, No. 13-cv-2127-WJM-NYW, 2015 WL 2155723, at *11-12 (May 6, 2015). The United States does not object to Freedom Path submitting to the Court the offer and acceptance letters forming the settlement, rather than making unsupported assertions.

[5] TIGTA later found the IRS also had used the names of liberal groups to identify applications for additional review. *See* TIGTA, "Review of Selected Criteria Used to Identify Tax-Exempt Applications for Review," https://perma.cc/57ND-FMU2 (Sept. 28, 2017).

had taken actions to resolve the shortcomings that were the subject of the initial report. TIGTA,

"Status of Actions Taken to Improve the Processing of Tax-Exempt Applications Involving

Political Campaign Intervention," https://perma.cc/ZJ7Y-9HQX (March 27, 2015). Regardless,

those past allegations do not affect whether Freedom Path qualifies for § 501(c)(4) status.

## ARGUMENT

I.   **The Court should make a *de novo* determination of Freedom Path's qualification for § 501(c)(4) status based on the administrative record**

Although the D.C. Circuit has noted confusion about the issue,[6] the near unanimous

weight of authority in this jurisdiction holds that § 7428 actions are decided based on a *de novo*

review of the record before the agency. *See, e.g.*, *Polm Family Found., Inc. v. United States*, 655

F. Supp. 2d 125, 127-28 (D.D.C. 2009), *aff'd*, 644 F.3d 406 (D.C. Cir. 2011) (citing *Airlie*

*Found. v. I.R.S.*, 283 F. Supp. 2d 58, 61-62 (D.D.C. 2003)); *Basic Unit Ministry of Alma Karl*

*Schurig v. Comm'r*, 670 F.2d 1210, 1213 (D.C. Cir. 1982). Freedom Path wrongly contends that

the Court should limit its determination to whether the IRS acted arbitrarily in denying its

§ 501(c)(4) application based solely on the IRS's analysis. *See* Pl's Resp. at 4 n.3.

Freedom Path relies on *National Alliance v. United States*, which included a footnote

suggesting that courts review § 501(c) denials under "a more customary type of judicial review

of the administrator's decision upon the administrative record." *Nat'l All. v. United States*, 710

F.2d 868, 871 n.6 (D.C. Cir. 1983). Yet the case the court cited for that proposition merely held

review should be on the existing administrative record (rather than allowing the applicant to

introduce new evidence in the § 7428 action). *See Virginia Pro. Standards Rev. Found. v.*

*Blumenthal*, 466 F. Supp. 1164, 1168 (D.D.C. 1979). In fact, *National Alliance* did not rely on a

---

[6] "Confusion about the standard," *Fund for the Study of Econ. Growth & Tax Reform v. I.R.S.*, 161 F.3d 755, 757 n.5 (D.C. Cir. 1998), appears to stem from the different meanings of "*de novo*," which could refer to a *de novo* trial with discovery and new evidence or a court's *de novo* declaration of tax status based on the administrative record.

review of the IRS's decision but instead made its own analysis of exempt status. *See Nat'l All.*, 710 F.2d at 870-73. And after *National Alliance*, this Court has continued to apply a *de novo* standard of review on the administrative record. The Court should continue to do so here.

## II.     Freedom Path is not entitled to § 501(c)(4) tax-exempt status

Under any reasonable construction of § 501(c)(4), an organization does not "operate exclusively to promote social welfare" if it is also substantially engaged in non-social welfare activities. That conclusion is compelled by the everyday meaning of the word "exclusively" and the Supreme Court's reasoning in *Better Bus. Bureau*, 326 U.S. at 283 ("exclusive" means a single substantial non-exempt purpose is disqualifying); *accord Contracting Plumbers Co-op. Restoration Corp. v. United States*, 488 F.2d 684, 686 (2d Cir. 1973) (applying *Better Business Bureau* to deny (c)(4) status and rejecting the contention that the "statutory definition ha[d] been significantly liberalized by regulation"). The Court should give effect to both the unambiguous statutory language ("exclusively operated"), § 501(c)(4), and the regulatory language ("primarily engaged"), Treas. Reg. § 1.501(c)(4)-1(a)(2). To do so, the Court must construe the regulation's phrasing as merely clarifying that an organization does not cease to operate "exclusively for the promotion of social welfare" merely because it also engages in an insubstantial non-exempt function. Freedom Path's contention that Congress implicitly amended § 501(c)(4) to allow for substantial political campaign intervention is wrong.

### A.  Congress did not acquiesce in allowing non-profit organizations to retain § 501(c)(4) status while engaging in substantial non-exempt activities

Variously known as the acquiescence, ratification, or reenactment doctrines, this canon calls for courts to treat a "congressional failure to revise or repeal the agency's interpretation [as] persuasive evidence that the interpretation is the one intended by Congress." *Fed. Deposit Ins. Corp. v. Philadelphia Gear Corp.*, 476 U.S. 426, 437 (1986) (quotations omitted). The Supreme

Court has urged "extreme care" when applying the doctrine. *Solid Waste Agency of N. Cook Cty.*

*v. U.S. Army Corps of Engineers*, 531 U.S. 159, 169 (2001). It only applies when:

> there is evidence that Congress considered and rejected the "*precise* issue"
> presented before the Court . . . However, absent such *overwhelming evidence* of
> acquiescence, we are loath to replace the plain text and original understanding of
> a statute with an amended agency interpretation.

*Rapanos v. United States*, 547 U.S. 715, 750 (2006) (plurality) (quotation omitted) (emphasis in

original); *Bismullah v. Gates*, 551 F.3d 1068, 1074 (D.C. Cir. 2009) ("[A]bsent an extraordinary

counter-indication, congressional failure to act is of no probative value."). In this Circuit, the

doctrine requires "a showing of both congressional awareness and 'express congressional

approval of an administrative interpretation if it is to be viewed as statutorily mandated.'" *Gen.*

*Am. Transp. Corp. v. I.C.C.*, 872 F.2d 1048, 1053 (D.C. Cir. 1989) (citation omitted). Approval

may take the form of an express incorporation of an agency regulation by reference. *See New*

*York v. E.P.A.*, 413 F.3d 3, 19 (D.C. Cir. 2005) (rejecting argument absent express reference).

> **1. Congress did not express any awareness or approval of a numerical
> primary purpose test in § 501(c)(4) when it created § 527**

Congress added § 527 to the Internal Revenue Code in 1975 to provide, for the first time,

a tax exemption for "political organizations." That type of tax-exempt group is one that receives

or makes expenditures "to influence the selection, nomination, election, or appointment of any

individual" to public office. *See* 26 U.S.C. § 527(e)(1)-(2). The definition includes (but is

broader than) "political campaign intervention" under Treas. Reg. § 1.501(c)(4)-1(a)(2).

The statutory text and legislative history indicate that in 1974 Congress understood that

*some* § 501(c) organizations (including (c)(4) organizations) had been engaging in *some* amount

of political campaign intervention. Yet neither the statute nor legislative history suggests that

Congress approved of construing the phrase "operated exclusively to promote social welfare" as

allowing a (c)(4) organization to dedicate 49% of its activities to political campaigning.[7] The portion of the 1974 Senate Report on which Freedom Path relies (Pl's Resp. at 8) falls far short of the "overwhelming evidence" necessary to prove that Congress was aware of (and endorsed) a numerical primary purpose test that would have allowed a social welfare organization to direct up to 49% of its activities to political campaign intervention. Although the Report notes that, "[u]nder present law, certain tax-exempt organizations (such as § 501(c)(4) organizations) may engage in political campaign activities," Freedom Path can point to no language in the Report that refers to (much less adopts) a numerical primary purpose test, nor does the history refer to a judicial decision, IRS regulation, revenue ruling, or other IRS pronouncement adopting such a test. As the Government stated in its opening brief, a § 501(c)(4) organization could always engage in an insubstantial amount of political campaigning under the Supreme Court's construction of "operated exclusively" in *Better Business Bureau*.[8]

## 2. Congress did not amend § 501(c)(4) by enacting § 527(f)(3)

Freedom Path contends that by allowing § 501(c) groups to put money into segregated funds for political campaign intervention, Congress evinced its intent that § 501(c)(4)s be permitted to direct up to 50% of their activities for political campaign intervention. Pl's Resp. at 7. As with the Senate Report, Congress's decision to permit some § 501(c) organizations to deposit some amount of funds into a segregated account to be used for political campaign intervention says nothing about Congress's views on *how much* time or money the § 501(c) can spend on political campaign intervention without jeopardizing its tax-exempt status.

---

[7] Indeed, enactment of § 527 reflects Congress's rejection of substantial political campaign intervention by fully tax-exempt § 501(c)(4) organizations. If § 501(c)(4) organizations could engage in that activity as "promoting social welfare," then § 527 would have been unnecessary.

[8] Indeed, Congress is presumed to have been aware of the statutory interpretations in *Better Business Bureau* and *Contracting Plumbers* (among other cases cited by the Government), which had been decided by 1975. *See Forest Grove Sch. Dist. v. T.A.*, 557 U.S. 230, 239 (2009) (dicta).

It is simply not the case, as Freedom Path argues, that "Congress provided that § 527 political-organization status and § 501(c)(4) status are two sides of the same coin." Pl's Resp. at 7, 21. The reality is that Congress conditioned (c)(4) status on an organization being "operated exclusively for the promotion of social welfare," which allows only insubstantial political campaign intervention. And to the extent that the statute and legislative history leave any ambiguity about the exemption, the Court is required to apply a narrow construction.[9] Moreover, the administrative record does not show that Freedom Path created a segregated fund for monies allocated to political campaign intervention. Even if some hypothetical organization could support its claim for § 501(c)(4) status by contending that it put up to 49% of its income into a segregated fund for political campaign intervention, Freedom Path does not present that case. *Cf. Am. Atheists, Inc. v. Shulman*, 21 F. Supp. 3d 856, 862 (E.D. Ky. 2014) (group could not raise constitutional challenge to requirements for church or religious organization when it had not applied for section 501(c)(3) status as a church or religious organization); *NonBelief Relief, Inc. v. Rettig*, No. CV 18-2347 (TJK), 2020 WL 122974, at *4 (D.D.C. Jan. 10, 2020).

### 3. The IRS's practices do not support Freedom Path's congressional acquiescence argument

Freedom Path focuses on statements by senior IRS officials and an initiative to reduce the backlog of applications for § 501(c)(4) status. First, those statements and activities post-date the 1975 enactment of § 527 by at least 15 years, and some by roughly 40. Congress could not

---

[9] Freedom Path cites to a Freedom of Information Act case for the proposition that "statutory exemptions under current precedent are not 'narrowly construed.'" Pl's Resp. at 3 n.2 (citing *Food Marketing Institute v. Argus Leader Media*, 139 S. Ct. 2356, 2366 (2019)). FOIA does not control the scope of tax exemptions available to non-profits. Tax exemptions are matters of legislative grace that may be claimed only when there is a clear provision for them. *See INDOPCO, Inc. v. Comm'r*, 503 U.S. 79, 84 (1992) (addressing income tax deductions); *Bingler v. Johnson*, 394 U.S. 741, 751-52 (1969) (recognizing the "principle that exemptions from taxation are to be construed narrowly"); *Fund for the Study of Econ. Growth & Tax Reform*, 161 F.3d at 759 (addressing claimed exemption under§ 501(c)(3)).

acquiesce in the statements or position when enacting § 527. Second, the words and actions

Freedom Path identifies do not change the meaning of "operated exclusively" in § 501(c)(4).

Although Freedom Path's acquiescence argument fails on the merits, the doctrine likely

does not even apply at all to the IRS's administrative practices and sub-regulatory guidance.

Congress endowed the IRS with statutory authority to make (and remake) regulations and other

guidance and to have those revisions apply retroactively. *See* 26 U.S.C. § 7805(b). The Seventh

Circuit has persuasively explained that the IRS's statutory authority to change an earlier

interpretation of the law and to have such change apply retroactively prevents plaintiffs from

invoking the acquiescence doctrine against the IRS. *See Schuster v. Comm'r*, 800 F.2d 672, 676

(7th Cir. 1986) (rejecting acquiescence argument in light of *Dickman v. Comm'r*, 465 U.S. 330

(1984)); *cf. Auto. Club of Mich. v. Comm'r*, 353 U.S. 180, 184, (1957); *Meyers v. Comm'r*, 68

T.C.M. (CCH) 1354 at *3 (T.C. 1994) (citing cases), *aff'd*, 79 F.3d 1150 (7th Cir. 1996); *Becker

v. Comm'r*, 751 F.2d 146, 150 (3d Cir. 1984) (*Dickman* "reflects the fact that Congress, not the

I.R.S., is charged with promulgating the tax laws.").

Freedom Path contends that § 501(c)(4) must be construed in light of an IRS backlog-

reduction initiative that approved § 501(c)(4) applications by organizations that agreed to certify

that they directed at most 40% of their time and money to political campaign intervention.[10] Pl's

Resp. at 38 ("this expedited-process 40% threshold confirms that the IRS believes the actual

threshold for the primary-activity test is something greater than 40%."). Yet this initiative did not

change the statutory definition of what it means to "operate exclusively to promote social

welfare."[11] Nor did the IRS agree that tax-exempt qualifications of the participating applicants

---

[10] Notably, the expedited process's definition of political campaign intervention differs from that generally applicable to § 501(c)(4), which may have justified a more liberal allowance (40%) of non-exempt operations.

[11] *See* Ex. 17, ADMIN-000199-205, at 201 (IRS Letter 5228 ("The standards and thresholds reflected in the representations are criteria for eligibility for expedited processing rather than new legal requirements.")).

would be free from further review. Agencies, including the IRS, may establish settlement initiatives that do not require imposition of all statutory requirements, fines or penalties. *See, e.g., Maze v. I.R.S.*, 862 F.3d 1087, 1089–90 (D.C. Cir. 2017) (describing initiative to compromise penalties for failure to disclose offshore accounts); *Harrison v. I.R.S.*, No. 20-CV-828 (CRC), 2021 WL 930266, at *2 (D.D.C. Mar. 11, 2021) (same).

Tellingly, the 2013 document Freedom Path relies on as part of its "longstanding administrative practice argument" expressly rejects the notion that there is a precise numeric interpretation of what "primarily" means in the IRS regulation. The document explains that the IRS chose a 40% time and expenditure threshold (with at least 60% dedicated to social welfare) "with the understanding that no precise definition exists in relevant revenue rulings, cases, or regulations for 'primarily' in this specific context and that the statute does not provide clear guidance." *See* Charting a Path Forward at the IRS: Initial Assessment and Plan of Action (June 24, 2013), https://perma.cc/NW3D-LBF9. Given the regulation's lack of precision, the IRS was well within its statutory authority to establish a program to address the backlog. As with the segregated fund challenge, Freedom Path chose not to self-certify that it would qualify under the initiative. Accordingly, the Court should not entertain this challenge.

### B.  No court has ever held that a non-profit organization that spends 49% of its resources on non-exempt purposes is entitled to § 501(c)(4) status

The Government's opening brief cited many decisions construing the phrase "operated exclusively" consistent with the Supreme Court's holding in *Better Business Bureau,* 326 U.S. at 283 (construing "operated exclusively" under an exemption from Social Security taxes, the statutory wording of which was nearly identical to the predecessor to § 501(c)(3), to mean that "the presence of a single non-[exempt] purpose, if substantial in nature, will destroy the exemption regardless of the number or importance of truly [exempt] purposes"). Gov't Memo at

11

8-10 n.3. Freedom Path wrongly dismisses them as inapposite because they either (1) predate Congress's (above-discussed) alleged ratification of a primary purpose test, or (2) involve § 501(c)(3) organizations.[12] Plaintiff fails to articulate a sound basis for construing "operated exclusively" differently for (c)(3) and (c)(4) organizations. The additional sentence it identifies in the § 501(c)(3) regulations, Pl's Resp. at 11 n.8, is nothing more than a rephrasing of the *Better Business Bureau* standard, which courts have consistently applied to § 501(c)(4), *see, e.g.*, *Mut. Aid Ass'n of Church of the Brethren v. United States*, 759 F.2d 792, 796 (10th Cir. 1985).

### 1. Courts have routinely rejected a numerical primary purpose test

One reason courts have avoided a numerical "safe harbor" or "primary purpose" test is that resource allocation may not always be the best way of assessing an organization's activities. Gov't Memo at 13-14, 16 (citing cases); *see, e.g.*, *Nationalist Movement v. Comm'r*, 102 T.C. 558, 589 (1994). Indeed, one reason the IRS issued a notice of proposed rulemaking in 2013 was to solicit "comments on how to measure the activities of organizations seeking to qualify as section 501(c)(4) social welfare organizations." Guidance for Tax-Exempt Social Welfare Organizations on Candidate-Related Political Activities, 78 FR 71535-01.

Freedom Path's only response is to assert that the Government's authority is *per se* inapposite because the cases either pre-date 1975 or involve organizations seeking § 501(c)(3) – rather than § 501(c)(4) – status. Although both provisions contain the phrase, "operated exclusively," Freedom Path theorizes that because § 501(c)(3) also forbids § 501(c)(3) organizations from engaging in *any* political campaign intervention,[13] "it would make perfect

---

[12] As explained above, Congress did *not* acquiesce as Freedom Path alleges. And, as discussed below, there *is* post-1975 authority adopting the *Better Business Bureau* construction.

[13] The statute defines (c)(3) organizations as a non-profit which, among other things, "does not participate in, or intervene in (including the publishing or distributing of statements), any political campaign on behalf of (or in opposition to) any candidate for public office." 26 U.S.C. § 501(c)(3).

sense that courts would not adopt any numerical thresholds for how much of that prohibited activity the organization could engage in." Pl's Resp. at 39.

There are several problems with Freedom Path's argument. Perhaps most obvious, Congress enacted (c)(3) and (c)(4) at the same time, and one "ordinarily assumes that identical words used in different parts of the same act are intended to have the same meaning." *Util. Air Regul. Grp. v. E.P.A.*, 573 U.S. 302, 319 (2014) (quotation omitted)). Another problem is that Freedom Path has not actually identified a judicial decision (pre- or post-1975) adopting a numerical threshold for how much political campaign intervention a § 501(c)(4) organization may engage in, or permitting a § 501(c)(4) organization to engage in substantial non-exempt activities. To the contrary, courts looking at the issue hold that *Better Business Bureau's* construction of the phrase, "operated exclusively" applies with equal force to § 501(c)(4) organizations. *E.g. Contracting Plumbers*, 488 F.2d 684. And at least three of those cases post-date the 1975 enactment of § 527, continuing to apply the same "substantial non-exempt purpose" standard. *See Am. Ass'n of Christian Sch. Voluntary Employees Beneficiary Ass'n Welfare Plan v. United States*, 850 F.2d 1510, 1516 (11th Cir. 1988); *Police Benev. Ass'n of Richmond, Va. v. United States*, 661 F. Supp. 765, 771-773 (E.D. Va.) (applying *Contracting Plumbers* to deny (c)(3) and (c)(4) status), *aff'd*, 836 F.2d 547 (4th Cir. 1987) (per curiam);[14] *Mut. Aid Ass'n*, 759 F.2d at 796.

Yet perhaps the biggest flaw in Freedom Path's argument is that it relies on the Court ignoring that political campaigning is not the *only* type of non-exempt activity that can disqualify

---

[14] The per curiam decision recites that the organization's exempt goal (relieving the public's tax burden) was "only incidental to its primary purpose" of providing financial security to its members. *Police Benev. Ass'n*, 836 F.2d 547 (4th Cir. 1987). Read in context, this phrase neither implicitly nor explicitly endorsed the "primary purpose test" Freedom Path is championing. The phrase simply reflects the fact that—like Freedom Path—the Police Benevolent Association's non-exempt activities were *so* substantial that they were also the organization's primary purpose. As the District Court observed, the Association could not "qualify as an organization 'operated exclusively for the promotion of social welfare' because at least one substantial purpose of PBA is non-exempt." *Id.* at 773.

a (c)(3) or (c)(4) organization from tax-exempt status. If—as Freedom Path argues—the statutory ban on a (c)(3) organization participating in political campaigns changes what it means to "operate exclusively" for an exempt purpose, that construction would apply equally to that phrase as it appears in both §§ 501(c)(3) and (c)(4). That would mean a § 501(c)(3) organization could dedicate up to 49% of its activities to a non-charitable or other non-exempt purpose without jeopardizing its tax-exempt status (as long as the non-exempt purpose were not political campaigning). That is clearly not the law. *See Manning Ass'n v. Comm'r*, 93 T.C. 596, 605, 611 (1989) (denying exemption as educational organization under § 501(c)(3) because of substantial non-exempt personal benefits and rejecting existence of 10% safe harbor).

### 2. None of Freedom Path's cited cases hold that § 501(c)(4) status turns on a numerical "primary purpose test"

Freedom Path misconstrues several judicial decisions to suggest that federal courts have adopted a numerical primary purpose test. *See* Pl's Resp. at 4-5 (quoting *Democratic Leadership Council, Inc. v. United States*, 542 F. Supp. 2d 63, 69 (D.D.C. 2008)) for the proposition "[f]ederal courts have long interpreted the statute consistently with the regulations: a § 501(c)(4) organization must *primarily* operate to bring about social improvements."). Each of the cases Freedom Path relies on are inapposite for one or more of the following reasons:

- The case does not involve an organization's eligibility for tax-exempt status at all, and instead uncritically cites provisions of IRS guidance or regulations as background. *E.g. F.E.C. v. Beaumont*, 539 U.S. 146, 149, 150 n.1 (2003); *Citizens Union of City of New York v. Att'y Gen. of New York*, 408 F. Supp. 3d 478, 482-84 (S.D.N.Y. 2019).

- The case turns on whether the operation of a parking lot and beach club was "substantially related" to social welfare purpose under a different statute (26 U.S.C. § 513). *E.g. Ocean Pines Ass'n, Inc. v. Comm'r*, 672 F.3d 284, 291 (4th Cir. 2012).

- The decision is based on analysis of the primary beneficiary (general public versus private members), rather than whether the entity engaged in more than insubstantial non-exempt activities.[15] *E.g. Monterey Public Parking Corp. v. United States*, 481 F.2d 175, 176 (9th Cir. 1973); *People's Educ. Camp Society, Inc. v. Comm'r*, 39 T.C. 756, 768 (1963).

- The case expressly passes on the issue. *E.g. Democratic Leadership Council, Inc. v. United States*, 542 F. Supp. 2d 63, 69 (D.D.C. 2008) ("even assuming that the DLC did not qualify as a § 501(c)(4) organization during the years in question, the IRS was not permitted to retroactively revoke that status").[16]

Thus, despite its bold claims of a judicial consensus adopting a numerical primary purpose test for § 501(c)(4) organizations, Freedom Path has not identified a single apposite case.

### C. Political campaign intervention does not promote social welfare

The administrative record shows that the substantial (indeed, predominant) purpose of Freedom Path's activities was to promote then-Senator Hatch's 2012 Republican primary bid. Freedom Path now, for the first time, argues in the alternative that the Court should simply redefine what it means to "promote social welfare." Pl's Resp. at 11 ("Political speech, including independent expenditures for express advocacy, promotes social welfare"). It does not raise that argument in its opening brief and thus waives it. *Stand up for California! v. U.S. Dep't of the Interior*, 204 F. Supp. 3d 212, 313 n.51 (D.D.C. 2016).

---

[15] Freedom Path has not established that the administrative record shows that the general public is the primary beneficiary of its activities. As demonstrated in the Government's opening brief, the "primary" beneficiaries of Freedom Path's activities are Orrin Hatch and the various private companies and consultants that Freedom Path paid to assist Orrin Hatch's primary campaign.

[16] Notably, the Government argued that the Democratic Leadership Council was not entitled to § 501(c)(4) status on the grounds that the DLC primarily benefited New Democrat elected officials and secondarily the Democratic party, however the Court did not reach the issue because of the IRS's procedural errors in revoking tax-exempt status. *Democratic Leadership Council*, 542 F. Supp. 2d at 67-69.

Even if Freedom Path's attempt to redefine "social welfare" were timely, it nevertheless lacks merit. Congress would have had little need to enact § 527 (and thereby grant a tax exemption for non-profit organizations primarily engaging in political campaign intervention) if the "promotion of social welfare" under § 501(c)(4) included political campaign intervention. Equally fatal is that when Congress enacted § 527, existing regulations provided that "[t]he promotion of social welfare does not include direct or indirect participation or intervention in political campaigns on behalf of or in opposition to any candidate for public office." 26 C.F.R. § 1.501(c)(4)-1(a)(2)(ii).

That regulation was issued under the authority contained in I.R.C. § 7805, T.D. 6391, 1959-2 C.B. 139, 1959 WL 68478 (1959), and is entitled to deference under *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984). *See Mayo Found. for Med. Educ. & Rsch. v. United States*, 562 U.S. 44, 57 (2011). Exclusion of political campaign intervention from the promotion of "the common good and general welfare" (26 C.F.R. § 1.501(c)(4)-1(a)(2)(i)) is neither arbitrary nor capricious. Political campaign intervention promotes the private interests of particular candidates and political parties, not the general welfare of the people of the community. *See Am. Campaign Acad. v. Comm'r*, 92 T.C. 1053, 1079 (1989).[17]

Absent this new meritless argument, Freedom Path has given no other explanation about how its activities described and documented in the administrative record promote social welfare. That is Freedom Path's burden, and it has failed to meet it.

---

[17] Congress has expressed no different intent. When it amended § 501(c)(3) in 1987 to ban participation both "on behalf of" and "in opposition to" candidates for public office, Pub. L. No. 100–203, § 10711, 101 Stat. 1330, 1330–464, it made clear that "[t]he prohibition on political campaign activities ... reflect[s] Congressional policies that the U.S. Treasury should be neutral in political affairs." H.R. Rep. No. 391, 100th Cong., 1st Sess. 1621, 1625 (1987).

**III.    Although the Court need not reach the constitutionality of Revenue Ruling 2004-6, it survives Freedom Path's constitutional challenge**

Revenue Ruling 2004-6 is informative, though it is not binding. And the Court need not rule on its constitutionality when deciding that Freedom Path is not entitled to tax-exempt status. Regardless, the Revenue Ruling captures a useful approach to help identify political campaign intervention, and its viewpoint-neutral approach passes constitutional muster.

**A.    Plaintiff's argument has not improved since its earlier loss on the issue of vagueness, and Plaintiff fails to show that any supposed vagueness in the Revenue Ruling made a difference in its own case**

Apart from repackaging its argument as an "as applied" challenge, Freedom Path bases its challenge to the Revenue Ruling on the same grounds that the court for the Northern District of Texas found unpersuasive. *See Freedom Path, Inc. v. I.R.S.*, 2017 WL 2902626 at *5 (N.D. Tex. July 7, 2017). While it is true that the Fifth Circuit vacated the district court's decision, the vacatur was because Freedom Path lacked standing to present a facial challenge. *See Freedom Path, Inc. v. I.R.S.*, 913 F.3d. 503, 508 (5th Cir. 2019). The Fifth Circuit did not suggest that the district court's vagueness analysis was wrong. *See id*.

Remarkably, Freedom Path still provides no evidence that the supposed vagueness in the Revenue Ruling made any difference *in its own application for tax-exempt status*. Freedom Path concedes that at least 39% of its direct expenditures were for political campaign intervention, and fails to rebut the Government's showing that campaign intervention made up 84% of its direct expenditures. Freedom Path offers no evidence and no argument for why a "less vague" Revenue Ruling would plausibly affect the outcome of its own application. Thus, it cannot succeed on an "as applied" vagueness claim. *See Holder v. Humanitarian Law Project*, 561 U.S. 1, 20 (2010) ("[E]ven to the extent a heightened vagueness standard applies, a plaintiff whose

17

speech is clearly proscribed cannot raise a successful vagueness claim under the Due Process

Clause of the Fifth Amendment for lack of notice.").

> **B.  The terms of this tax subsidy do not make it a tool for the suppression of disfavored ideas, so the Revenue Ruling does not raise First Amendment concerns and is only subject to a lenient review for vagueness**

Freedom Path's central contention is that "speech-based conditions on tax subsidies"

must pass an "'especially stringent' vagueness standard" because "speech is involved," thus

automatically raising First Amendment concerns. Pl.'s Resp. at 13. This is wrong. Under the

First Amendment, speech-related conditions on Government benefits raise less concern than

prohibitions of speech. Plaintiff obscures this, with cherry-picked quotes about the dangers of

suppressing speech that mostly come from inapposite cases involving the punishment of

expressive activity. So it is worth reiterating the framework that applies here.

The first question is whether a law raises a First Amendment concern. Not all laws that

theoretically "implicate" speech thereby raise a First Amendment concern. For instance, in

response to the argument that fraudulent tax reporting penalties burden the freedom of speech,

some courts have concluded that "the preparation of tax returns does not involve the First

Amendment at all." *See United States v. Rowlee*, 899 F.2d 1275, 1279 (2d Cir. 1990).

The second question is whether a law that restricts (or infringes or abridges) speech

therefore *violates* the First Amendment. Though courts do not use the term "infringe" versus

"violate" with scientific precision, the point is that not all burdens on speech are unconstitutional

ones. Some laws that expressly suppress speech are still constitutional because of countervailing

Government interests. *See, e.g.*, *Buckley v. Valeo*, 424 U.S. 1, 17, 29 (1976); *accord United

States v. Lee*, 455 U.S. 252 (1982) (rejecting a free exercise challenge to the Social Security tax

"[b]ecause the broad public interest in maintaining a sound tax system is of such a high order,

religious belief in conflict with the payment of taxes affords no basis for resisting the tax.").

The third question is whether a law (or rule) that does not expressly restrict protected speech could still be enforced to do that. This is the question of whether a law is vague and its vagueness would allow the Government to tread into the area of protected speech. *See Vill. Of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*, 455 U.S. 489 (1982); *Grayned v. City of Rockford*, 408 U.S. 104 (1972). While a law may permissibly curtail some speech – because the speech is unprotected (like "obscenity") or because a countervailing Government interest overcomes the protection – if the terms of the law sweep in other speech, this creates a First Amendment concern. *See, e.g.*, *Ashcroft v. Free Speech Coal.*, 535 U.S. 234, 246 (2002) (law that criminalized production of obscenity and child pornography was unconstitutional for also punishing protected speech); *Minnesota Voters Alliance v. Mansky*, 138 S. Ct. 1876, 1891 (2018) (while a more precise ban on election day political speech in a polling place could be proper because of compelling Government interest, law at issue was too vague). Such rules and laws, because of their potential to circumscribe the exercise of First Amendment rights, will be subject to a stricter vagueness review. *Smith v. People of the State of California*, 361 U.S. 147, 151 (1959).[18] Meanwhile, laws that do not criminalize conduct or restrict the exercise of a constitutional right are only subject to a lenient review for vagueness. *See Metro. Washington Ch. v. D.C.*, 57 F. Supp. 3d 1, 30-31 (D.D.C. 2014)).

---

[18] According to Freedom Path, "DOJ appears to suggest that stringent vagueness review should only apply when a law actually violates some other First Amendment doctrine besides vagueness" and so the Government's position renders the strict vagueness doctrine "superfluous." Pl's Resp. at 15. This is wrong, and two of Freedom Path's most cited cases – *Mansky* and *Fox* – provided counter examples.

In *Mansky*, the law banned certain forms of "speech" in a polling place on election day (thus infringing freedom of speech), but that alone did not violate the First Amendment. As the Court observed, other states have constitutional "viewpoint-neutral restrictions on election-day speech." *Mansky*, 138 S. Ct. at 1883. It was the *vagueness* of the speech ban that made it unconstitutional. *Id.* at 1891.

*Fox* struck down the F.C.C. policy in place without having to decide whether a more lucid policy on what constituted indecency *could* clear the First Amendment. *See F.C.C. v. Fox Television Stations, Inc.*, 567 U.S. 239, 258 (2012) (declining to reconsider decision in *F.C.C. v. Pacifica*); *see F.C.C. v. Pacifica*, 438 U.S. 726, 729, 744 (1978) (allowing for restriction of "indecent" – rather than only "obscene" – content on broadcast radio, after ruling that broadcasting is entitled to less than full First Amendment protection).

Conditions for a tax subsidy, like the Revenue Ruling, seldom raise First Amendment concerns at all. So, one never gets past the first question set out above. That is because a decision not to subsidize speech with a tax exemption "has not infringed any First Amendment rights or regulated any First Amendment activity." *Regan v. Taxation with Representation of Washington*, 461 U.S. 540, 546 (1983); *see also Harris v. McRae*, 488 U.S. 297, 316 (1980) (refusal to subsidize a woman's freedom of choice does not impinge on that freedom).[19]

Generally, the First Amendment is not implicated when the Government sets the terms for benefits it chooses to provide. Still, the Government may not wield the prospect of a benefit as a mechanism to suppress disfavored viewpoints. This narrow limitation was central to the decisions in the cases of *Speiser v. Randall* and *Perry v. Sindermann*. In *Speiser*, California required a person who sought a tax break to sign a statement that he had never advocated the overthrow of the Government or supported a foreign government hostile to the United States. *Speiser v. Randall*, 357 U.S. 513 (1958). *Perry* involved a professor at a state university claiming his contract was not renewed because of his criticism of a state policy. *Perry v. Sindermann*, 408 U.S. 594 (1972). In both cases, the Court observed that a Government benefit program cannot be a vehicle for the suppression of unpopular ideas, and thus the benefit should not turn (as it did in *Speiser* and *Perry*) on a viewpoint-based litmus test unrelated to the purpose of the subsidy. *See, e.g.*, *Regan*, 461 U.S. at 550 (Congress cannot provide subsidies in a manner "aimed at the suppression of dangerous ideas") (citing *Cammarano v. United States*, 358 U.S. 498, 513 (1959) (quoting *Speiser*, 357 U.S. at 519)).

---

[19] Freedom Path points out that *Regan* does not involve a vagueness challenge. *Regan* is important because it settles the threshold question of whether the terms of a tax subsidy raise First Amendment concerns, and thus determines the level of vagueness review that applies to this Revenue Ruling.

However, as *Regan* notes, the § 501(c) tax exemption does not raise this concern, and "the *Speiser-Perry* model" does not "fit[]," because the terms of the tax exemptions are tied to their purpose, and are not a means to dissuade unrelated speech. *Regan*, 461 U.S. at 545-46; *see also Agency for Int'l Dev. v. Alliance for Open Soc'y Int'l, Inc.*, 570 U.S. 205, 214-15 (2013); *Rust v. Sullivan*, 500 U.S. 173, 196-97 (1991) (speech-related restrictions for participation in government program were not "unconstitutional conditions," because restrictions ensured funds were spent for purposes for which they were authorized).

Ignoring this broader framework, Freedom Path argues that stringent review applies to the Revenue Ruling for "merely pos[ing] the *risk* of arbitrary enforcement or viewpoint discrimination," Pl's Resp. at 16, and that it fails that review. This argument relies on *Big Mama Rag*, a decision that pre-dates the Supreme Court's decision in *Regan*. In *Big Mama Rag*, the D.C. Circuit held that a regulation defining "educational" for purposes of a tax subsidy was unconstitutionally vague because it invited IRS officials to "pass judgment" on an applicant's views and goals. *Big Mama Rag, Inc. v. United States*, 631 F.2d 1030, 1034, 1040 (D.C. Cir. 1980). *Big Mama Rag* does not, however, allow a court to subject tax subsidy requirements to "stringent vagueness review" anytime someone claims that those requirements could leave an opening for an official to discriminate against an applicant based on political leanings.

Reading *Big Mama Rag* as Freedom Path does would make stringent review of tax subsidies the norm rather than the exception, hollowing out *Regan*'s holding that such subsidies do not restrict or regulate First Amendment rights. 461 U.S. at 545. Instead, under Freedom Path's proposal, rules for furnishing tax subsidies would be subject to the same vagueness review as rules that could be enforced to prohibit, penalize, or even criminalize speech, despite the dramatically different consequences of each type of rule. Freedom Path pays lip service to the

observation that "the government can make content-based distinctions when it subsidizes speech," citing *Davenport v. Washington Educ. Ass'n*, 551 U.S. 177, 188-89 (2007), but it would controvert *Davenport* to strike down a Revenue Ruling, set forth in viewpoint-neutral terms, on the basis that an official could theoretically wield it to commit viewpoint discrimination.[20] It is even more of a leap here, when there is nothing in the administrative record on which to conclude that the IRS improperly used the Revenue Ruling to deny Freedom Path's application because of its political views rather than its political campaign intervention.[21]

Big Mama Rag can be squared with *Regan* when read to hold that the challenged regulation inevitably fostered viewpoint discrimination. *See* Smolla & Nimmer on Freedom of Speech, § 19:9 ("Once one ventures beyond principles that prohibit violation of the Equal Protection Clause, *or brazen viewpoint-based discrimination*, however, the First Amendment principles that restrain government decisions to fund or not to fund private speech activity are generally subject to only rational basis review.") (emphasis added). There is support for this reading within the decision. The Court in *Big Mama Rag* emphasized that the meaning of "educational" set forth in the challenged regulation *could not* be applied in a viewpoint-neutral manner. *See* 631 F.2d at 1038 (applying the "full and fair" standard was likely to "be colored by one's attitude towards the author's point of view" and no "value-free measurement" was conceivable). Plus, *Big Mama Rag* relied on *Speiser* for the crucial part of its decision. *Speiser*, however, concerned an expressly viewpoint-based loyalty oath, cited the prohibition against

---

[20] Furthermore, Freedom Path's challenge would not be limited to tax regulations. There is no reason why the "stringent vagueness review" for which it argues would not apply to the tax laws themselves – 501(c)(3) and (c)(4), for example. Applying such stringent review to the statutes, as if they implicated the First Amendment, would undercut the principle that "[l]egislatures have especially broad latitude in creating classifications and distinctions in tax statutes," and that classifications in the tax code are presumed constitutional. *See Mueller v. Allen*, 463 U.S. 388, 396 (1983); *Regan*, 461 U.S. at 547.
[21] As discussed above, Freedom Path's references to past allegations regarding the IRS's selection criteria, the TIGTA report, and Government settlements are red herrings. That earlier controversy does not show that the Revenue Ruling is a vehicle for viewpoint discrimination.

government subsidies "aimed at the suppression of dangerous ideas," and made no mention of vagueness within the oath. 357 U.S. at 518, 519. A narrow reading of *Big Mama Rag* (limiting it to rules whose terms inevitably involve judgments of "viewpoint") places it in the *Speiser* line of cases, which – as noted above – creates no conflict with *Regan*. *See supra* at 20-21. This reading of *Big Mama Rag* would still target the prohibition against government subsidies "*aimed* at the suppression of dangerous ideas," without catching viewpoint-neutral requirements for tax exemptions (like this Revenue Ruling) in the crossfire. In contrast to the regulation in *Big Mama Rag*, the Revenue Ruling is set out in neutral terms that do not call for viewpoint judgments.[22]

The rest of Freedom Path's "free speech" cases still fail to provide support for its position. As explained in the Government's opening brief, *Citizens United* and *Mansky* involve laws that prohibited speech and were enforced by civil and criminal penalties. Those consequences are a far cry from denial of a tax subsidy, and thus irrelevant. Still, Freedom Path presents more of the same faulty analysis in its latest brief.[23] *Interstate Circuit, Inc. v. City of Dallas* involved a city ordinance that required cinemas to flag films "not suitable for young persons," and subjected them to fines (and possible revocation of a license) for failing to comply. 390 U.S. 676, 678, 680 (1968). In *Bantam Books, Inc. v. Sullivan*, a local "Commission to

---

[22] More generally, it is a problem for Freedom Path that *Big Mama Rag* is the centerpiece of its argument. The D.C. Circuit has cited this case only five times, and only once since 1988 (in an unpublished decision). One of those D.C. Circuit cases was *Taxation With Representation of Washington v. Regan*, 676 F.2d 715, 728 (D.C. Cir. 1982), which the Supreme Court reversed, 461 U.S. 540. Few other courts have relied on *Big Mama Rag*. Notably, the Ninth Circuit cited it when stating, "Although the need for fair warning may be less when a statute does not directly regulate conduct, the need for specific standards to prevent arbitrary and discriminatory application of provisions that touch upon speech may be even greater when a statute subsidizes speech and the risk that the provision on its face will inhibit speech remains." *Finley v. Nat'l Endowment for the Arts*, 100 F.3d 671, 679 (9th Cir. 1996). But the Supreme Court reversed, determining that the use of "subjective criteria" in grant making was not unconstitutionally vague. *Nat'l Endowment for the Arts v. Finley*, 524 U.S. 569, 589-90 (1998).

[23] Freedom Path continues to cite *Mansky*, though the law challenged in that case "plainly restrict[ed]" speech and its vagueness was "a serious matter" because "the whole point of the exercise [was] to prohibit the expression of political views." *Mansky*, 138 S. Ct. at 1885, 1891. Freedom Path continues to cite *Fox*, though that case dealt with agency enforcement of a law that punished the broadcast of "obscene, indecent, or profane language" with fines, penalties and even jail time. *Fox*, 567 U.S. at 243, 252, 255.

Encourage Morality in Youth" could not itself punish those who violated its standards, but could refer them to face criminal obscenity charges. 372 U.S. 58, 69 (1963) ("The Commission's operation is a form of effective state regulation superimposed upon the State's criminal regulation of obscenity[.]"). In contrast, the Revenue Ruling "threatens" no consequences near that magnitude.

The next cluster of cases Freedom Path cites in its recent brief – *Cramp*, *Keyishian* and *Baggett* – all involve broad loyalty oaths required as a condition of Government employment. *See Keyishian v. Bd. of Regents of Univ. of State of N.Y.*, 385 U.S. 589 (1967); *Baggett v. Bullitt*, 377 U.S. 360 (1964); *Cramp v. Board of Pub. Instr. Of Orange Cty. Fla.*, 368 U.S. 278 (1961). Those cases, like *Speiser*, all involve the "unconstitutional condition" doctrine as a limit on what the Government can demand in exchange for a benefit, *see supra* at 20-21. But the tax exemption at issue here does not implicate this doctrine. *See Regan*, 461 U.S. at 545-46; *Agency for Int'l Dev.*, 570 U.S. at 214-15; *Rust*, 500 U.S. at 196.

Freedom Path cites *Leathers v. Medlock* for language on how "differential taxation" can threaten freedom of speech. Pl's Resp. at 16. But that case involved a tax imposed on "selected segments of the media" and thus addressed a situation that is the inverse of what this Court faces: an organization that seeks an *exemption* from a generally applicable tax. 499 U.S. 439, 444 (1991).

### C.  Plaintiff's untimely "freedom of association" argument likewise fails because conditions on seeking a tax subsidy do not "force" it to make any disclosures

Freedom Path now argues that the supposed vagueness of the Revenue Ruling also violates its First Amendment freedom of association. It does not mention the freedom of association once in its opening brief and thus waives that argument. *Stand up for California!*, 204 F. Supp. 3d at 313 n.51. Anyway, the argument is quickly dispatched on the merits.

24

Although *forcing* an organization to disclose its membership would burden the freedom of association, by imposing conditions on a tax subsidy, the Government is not forcing disclosures any more than it is restricting speech. *Regan*, 461 U.S. at 545-46. As the Eleventh Circuit put it in rejecting a similar argument:

> Congress has enacted no barrier to the exercise of the appellees' constitutional rights. Rather, Congress has established certain requirements that must be followed in order to claim the benefit of a public tax subsidy. Any political organization uncomfortable with the disclosure of expenditures or contributions may simply decline to register under section 527(i) and avoid these requirements altogether.

*Mobile Republican Assembly v. United States*, 353 F.3d 1357, 1361 (11th Cir. 2003).

## CONCLUSION

Congress never authorized § 501(c)(4) tax-exempt organizations to substantially engage in anything other than promoting social welfare. No statute or regulation equates "promoting social welfare" with promoting a candidate for elected office. No court has held that the First Amendment requires taxpayers to subsidize anonymous political campaign ads. The Court should deny Freedom Path's motion for summary judgment and grant Defendant's cross-motion because Freedom Path has failed to show, by any measure, that it qualifies for tax-exempt status as an organization that exclusively promotes social welfare under § 501(c)(4).

#

#

#

#

#

DATED: April 16, 2021

DAVID A. HUBBERT
Acting Assistant Attorney General

*/s/ Laura M. Conner*
LAURA M. CONNER (VA Bar No. 40388)
NISHANT KUMAR (DC Bar No. 1019053)
RICHARD HAGERMAN (NY Bar No. 5113303)
Trial Attorneys
JOSEPH A. SERGI (DC Bar No. 480837)
Senior Litigation Counsel
Tax Division
U.S. Department of Justice
Post Office Box 227
Washington, DC 20044
Tel: (202) 514-2986
Fax: (202) 514-6866
laura.m.conner@usdoj.gov
nishant.kumar@usdoj.gov
richard.j.hagerman@usdoj.gov
joseph.a.sergi@usdoj.gov

Counsel for Defendants