**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| FREEDOM PATH, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:20-cv-01349 (JMC) |
| | ) | |
| INTERNAL REVENUE SERVICE, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO PLAINTIFF'S
<u>RENEWED MOTION FOR SUMMARY JUDGMENT</u>**

TABLE OF CONTENTS

INTRODUCTION…………………………………………………………………………. 1

ARGUMENT……………………………………………………………………………..2

I.      Freedom Path fails to explain how its activities promote social welfare……………..2

II.     Freedom Path's attempts to bring political campaign intervention under the umbrella of promoting social welfare fail…………………………………………..….….…….3

        Freedom Path's statutory argument, which focuses on the language of § 501(c)(3) and (c)(4), ignores the complete statutory scheme……………………....4

        Freedom Path also ignores that supporting (or opposing) a single candidate or party benefits private interests over community-wide interests……………………………6

        Freedom Path is wrong when it contends that campaign finance law should be applied to limit the concept of political campaign intervention, for purposes of determining tax exemption, to including only express calls to vote for or against a candidate……………………………………….................................................7

III.    Freedom Path's argument that "primarily" means that it may devote up to 50% of its activities to political campaign intervention contravenes Congress's requirement that an organization exempt from tax under § 501(c)(4) must "exclusively" promote social welfare…………………………………………………………………………….10

        The statutory language of "exclusively" means the presence of a substantial non-exempt purpose precludes exemption……………………………………………….10

        "Primarily" as used in Treasury Regulation § 1.501(c)(4)-1 does not permit a substantial non-exempt purpose…………………………………………….…13

        Agency practice also does not change the statutory requirement……………….…14

        In any event, it is unnecessary to decide this point because more than 50% of Freedom Path's operations do not promote social welfare……………….……...16

CONCLUSION………………………………………………………….……………...17

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

**Cases**

*American Campaign Academy v. Comm'r*,
    92 T.C. 1053 (1989)......................................................................................................6

*Ass'n of the Bar of the City of New York v. Comm'r*,
    858 F.2d 876 (2d Cir. 1988)..........................................................................................7

*Basic Unit Ministry of Alma Karl Schurig v. Comm'r*,
    670 F.2d 1210 (D.C. Cir. 1982)....................................................................................16

*Better Business Bureau of Washington v. United States*,
    326 U.S. 279 (1945)..............................................................................10, 11, 12, 13

*Buckley v. Valeo*,
    424 U.S. 1 (1976)...................................................................................................8, 10

*Church in Bos. v. Comm'r*,
    71 T.C. 102 (1978)........................................................................................................13

*Comm'r v. Lake Forest, Inc.*,
    305 F.2d 814 (4th Cir. 1962) ...............................................................................2, 6, 11

*Contracting Plumbers Co-op. Restoration Corp. v. United States*,
    488 F.2d 684 (2d Cir. 1973).................................................................6, 11, 12, 14

*Harrison v. I.R.S.*,
    No. 20-CV-828 (CRC), 2021 WL 930266 (D.D.C. Mar. 11, 2021)......................................15

*Iowaska Church of Healing v. Werfel*,
    105 F.4th 402 (D.C. Cir. 2024)......................................................................................3

*Maze v. I.R.S.*,
    862 F.3d 1087 (D.C. Cir. 2017).....................................................................................15

*Memorial Hermann v. Comm'r*,
    120 F.4th 215 (5th Cir 2024) .........................................................................11, 13, 15

*Mobile Republican Assembly v. United States*,
    353 F.3d 1357 (11th Cir. 2003) ......................................................................................9

*Mut. Aid Ass'n of Church of the Brethren v. United States*,
    759 F.2d 792 (10th Cir. 1985) ......................................................................................11

*People's Educ. Camp Soc. Inc. v. Comm'r*,
331 F.2d 923 (2d Cir. 1964)........................................................................2, 11, 14

*Polm Family Found., Inc. v. United States*,
655 F. Supp. 2d 125 (D.D.C. 2009), *aff'd*, 644 F.3d 406 (D.C. Cir. 2011)............................16

*Regan v. Taxation With Representation of Washington*,
461 U.S. 540 (1983)........................................................................................6, 9

*Stevens Bros. Found. v. Comm'r*,
324 F.2d 633 (8th Cir. 1963) ................................................................................12

*Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*,
455 U.S. 489 (1982)..............................................................................................9

**Statutes**

26 U.S.C. § 501(c)(3)............................................................................... *passim*

26 U.S.C. § 501(c)(4)............................................................................... *passim*

26 U.S.C. § 501(c)(4)(A) ................................................................................2

26 U.S.C. § 527............................................................................................ *passim*

26 U.S.C. § 527(e)(1).......................................................................................11

26 U.S.C. § 527(e)(2).........................................................................................5

26 U.S.C. § 527(f)(1) ......................................................................................1, 5

Federal Election Campaign Act .............................................................................9

**Other Authorities**

26 C.F.R. § 1.501(c)(4)-1(a)(1)(ii)......................................................................10

26 C.F.R. § 1.501(c)(4)-1(a)(2) .........................................................................10

*Oxford English Dictionary*..................................................................................11

H.R. Rep. No. 94-658 (1976).............................................................................16

Charting a Path Forward at the IRS: Initial Assessment and Plan of Action (June
24, 2013), https://perma.cc/NW3D-LBF9 ............................................................15

S. Rep. No. 93-1357 (1974) .......................................................................4, 5, 6,12

S. Rep. No. 94-938(I), (1976)............................................................................16

iii

**INTRODUCTION**

The Court should deny Freedom Path's request for § 501(c)(4) status because Freedom Path fails to meet its burden to prove it "operate[s] exclusively for the promotion of social welfare." 26 U.S.C. § 501(c)(4). Freedom Path does not explain how its communications benefit the community as a whole, or how they bring about civic betterment and social improvement, other than to classify, on a wholesale basis, political campaign intervention as an activity that promotes social welfare. But that approach ignores the overarching statutory scheme, which shows that Congress determined that political campaign intervention does not promote social welfare by subjecting it to tax under § 527(f). As an alternative to its argument that political campaign intervention promotes social welfare, Freedom Path argues that political campaign intervention should be interpreted narrowly to include only express appeals to "vote for" or "vote against" a candidate. But that definition inappropriately relies on jurisprudence interpreting express prohibitions in federal-election-law statutes, which would, if adopted by this Court, improperly limit the concept of political campaign intervention for purposes of determining whether an organization meets the qualifications for a tax subsidy. Political campaign intervention does not promote social welfare; accordingly, it is not an exempt activity under the statute.

As to the amount of non-exempt activity that an organization may engage in without jeopardizing its tax-exempt status under § 501(c)(4), Freedom Path urges an expansive interpretation that flouts Congress's mandate that such an organization must be operated "exclusively" for the promotion of social welfare. Ultimately, however, it is unnecessary to determine a precise threshold of how much is too much to decide this case. That is because an analysis of all of Freedom Path's communications shows that at least 78% of its activities qualify

as a non-exempt activity, i.e., political campaign intervention. And that amount surpasses even Freedom Path's overly expansive test for how much non-exempt activity § 501(c)(4) will tolerate.

## ARGUMENT

### I.    Freedom Path fails to explain how its activities promote social welfare.

To qualify for the privilege of tax-exempt status under § 501(c)(4), Freedom Path must establish that it "operate[s] exclusively for the promotion of social welfare." 26 U.S.C. § 501(c)(4)(A). "[T]he promotion of social welfare . . . involv[es] the serving of 'purposes beneficial to the community as a whole,' or the promotion of the 'welfare of mankind' in the manner generally of the charitable, educational and religious organizations exempted by like provisions of the Code." *People's Educ. Camp Soc. Inc. v. Comm'r*, 331 F.2d 923, 930 (2d Cir. 1964). "In short, 'social welfare' is the well-being of persons as a community." *Comm'r v. Lake Forest, Inc.*, 305 F.2d 814, 818 (4th Cir. 1962) (looking to the plain meaning of the term).

Freedom Path's communications surrounding then-Senator Hatch's 2012 Republican primary bid comprise almost all its activities. As a result, the parties' briefing has necessarily focused on the proper standard to determine whether those communications constitute "political campaign intervention" and, if so, how much political campaign intervention § 501(c)(4) tolerates. That said, the ultimate issue in this case is whether Freedom Path, based on the contents of the administrative record, adequately demonstrates its activities promote social welfare. As explained in detail in the defendants' renewed motion for summary judgment, Freedom Path has dedicated approximately 78% of its total program expenses on activities that do not promote social welfare within the meaning of § 501(c)(4). *See* Doc. 55-1 at 20-26. While the parties offer different definitions of "political campaign intervention," the Court's adoption of

2

the narrow one Freedom Path espouses would not – by default – mean it promotes social welfare. Freedom Path has the affirmative duty to demonstrate its activities do so, and it has failed to satisfy that burden. *See Iowaska Church of Healing v. Werfel*, 105 F.4th 402, 414 (D.C. Cir. 2024).

Instead, Freedom Path chooses two alternative routes to try to bring its activities within the realm of acceptable § 501(c)(4) pursuits, each of which necessitates classifying political campaign intervention as an activity that promotes social welfare. Those arguments fail for the reasons discussed next.

**II.      Freedom Path's attempts to bring political campaign intervention under the umbrella of promoting social welfare fail.**

First, Freedom Path creates a brand-new category, "civic speech," to try to satisfy the requirement of promoting social welfare. While otherwise undefined, Freedom Path contends that "'express advocacy' for the election of particular political candidates through independent expenditures *not* coordinated with candidates" falls into what it calls "civic speech." Doc. 54-1 at 8 (emphasis in original). Second, and as an alternative to creating a category of "civic speech," Freedom Path contends that jurisprudence examining a federal election statute – the violation of which carries civil and criminal penalties – should establish the mark of what constitutes political campaign intervention as a condition for an optional tax subsidy under the tax law. In doing so, Freedom Path takes too narrow a view of what communications qualify as political campaign intervention. It contends that "'political campaign intervention' should be limited to express advocacy or its functional equivalent," Doc. 54-1 at 9, thereby permitting a broader scope and scale of political campaign activity to be subsidized under the tax laws and thus thwarting Congress's view of what activities promote social welfare. Both arguments fail.

3

As an initial matter, Freedom Path does not meet its burden of proof because it does not define what "civic speech" is, cites no authority defining such a term, provides no objective criteria, and does not explain how its specific activities fit within that term. Beyond that, both Freedom Path's "civic speech" argument and its proposed limit to the contours of "political campaign intervention" fail because they both would permit political activity that is out of bounds for an organization that promotes social welfare.

Freedom Path's statutory argument, which focuses on the language of § 501(c)(3) and (c)(4), ignores the complete statutory scheme.

Freedom Path ignores the complete statutory scheme relevant to tax-exempt social welfare organizations when it points to the difference in language between § 501(c)(3) and § 501(c)(4). The fact that § 501(c)(3) includes an express prohibition against participating or intervening in political campaigns does not mean, as Freedom Path incorrectly argues, that Congress intended the promotion of social welfare to encompass that activity by not expressly prohibiting it in § 501(c)(4).

Even though § 501(c)(4) does not expressly mention intervening in political campaigns, the overall statutory context shows that Congress did not consider the promotion of social welfare to encompass political campaign intervention. If political campaign intervention furthered social welfare, then § 527 (in which Congress granted a tax exemption for non-profit organizations primarily engaging in political campaign intervention) would have been unnecessary because such organizations would have qualified as tax exempt under § 501(c)(4). Before the passage of § 527 in 1975, Congress and the IRS understood that political parties and committees were taxable organizations. *See* S. Rep. No. 93-1357, at 25-26 (1974). If political campaigning constituted a social-welfare purpose under § 501(c)(4), then enacting § 527 would have been unnecessary because political parties would have qualified for exemption under

4

§ 501(c)(4). Section 501(c)(4) should not be interpreted in a way that would render the tax exemption in § 527 superfluous.

Congress's understanding that political campaign intervention does not further a § 501(c)(4) exempt purpose is further evident in its decision to tax organizations that engage in the exempt activities of a § 527 political organization. *See* 26 U.S.C. § 527(f)(1). The "exempt function" of a § 527 political organization means "the function of influencing or attempting to influence the selection, nomination, election, or appointment of any individual to any Federal, State or local public office or office in a political organization, or the election of Presidential or Vice-Presidential electors, whether or not such individual or electors are selected, nominated, elected, or appointed." 26 U.S.C. § 527(e)(2). The § 501(c) organization is treated as having political organization taxable income in an amount equal to the lesser of its net investment income or its exempt function expenditures. 26 U.S.C. § 527(f)(1). Consequently, § 501(c) organizations may be taxed under § 527 only "to the extent they actually operate as political organizations." *See* S. Rep. No. 93-1357, at 29 (1974). In other words, when a § 501(c)(4) social welfare organization conducts an activity that would be "exempt" for a § 527 organization, it is treated differently and taxed under § 527(f). This is analogous to the taxation of the non-exempt "unrelated business taxable income" of § 501(c) organizations under § 511; Congress has identified a species of activity that does not align with an exempt purpose and subjected it to tax.

As this Court recognized, "section 527 offers different tax treatment than 501(c)(4), treatment that may be less favorable to an organization depending on its specific activities." Doc. 48 at 36. The statutory scheme of § 501(c)(4) and § 527 working together ensures that social-welfare organizations only get a tax subsidy for their social-welfare activity, and that they do not operate as political organizations tax-free while avoiding any of the requirements

Congress has mandated for acquiring and maintaining tax exemption under § 527 (whereas § 527

"political organizations" only are taxed on their non-exempt function, i.e., non-political

campaign activities). Indeed, Congress intended that "campaign-type activities would be taken

entirely out of the § 501(c) organization, to the benefit both of the organization and the

administration of the tax laws." S. Rep. No. 93-1357, at 30 (1974).

In sum, if Congress had considered political campaign intervention to promote exempt

purposes for any § 501(c) organization, then it would not have subjected that activity to tax.

Freedom Path also ignores that supporting (or opposing) a single candidate or party
benefits private interests over community-wide interests.

Freedom Path disregards that engaging in activities to specifically support or oppose only

one candidate or political party substantially advances the private interests of that one candidate

or party over the broader public interests of the community as a whole. *See American Campaign*

*Academy v. Comm'r*, 92 T.C. 1053, 1070, 1078-1079 (1989) (organization that "conducted its

educational activities with the partisan objective of benefitting Republican candidates and

entities" substantially benefited private interests). As the Supreme Court more broadly

recognized, "Congress was concerned that exempt organizations might use tax-deductible

contributions . . . to promote the private interests of their members." *Regan v. Taxation With*

*Representation of Washington*, 461 U.S. 540, 550 (1983); s*ee also Lake Forest*, 305 F.2d at 820

("'Civic' pretensions and considerations of 'social welfare' aside, plainly other substantial

realizations motivated and are envisioned by the corporation."); *Contracting Plumbers Co-op.*

*Restoration Corp. v. United States*, 488 F.2d 684, 687 (2d Cir. 1973) (finding "the cooperative is

of tremendous value to the private economic interests of its members – a clearly non-exempt

purpose"). Freedom Path never shows or proves that its activities, in a neutral and nonpartisan

way, simply encourage the public at large to become more active in civic affairs, rather than only supporting the reelection of Senator Hatch.

> Freedom Path is wrong when it contends that campaign finance law should be applied to limit the concept of political campaign intervention, for purposes of determining tax exemption, to including only express calls to vote for or against a candidate.

Freedom Path is clear that it believes, contrary to the above principles, that political campaign intervention – whether by express invocations to vote for or against a candidate or by less blatant messaging – should qualify as the promotion of social welfare within the meaning of § 501(c)(4). But if that front-line argument fails (as it must), Freedom Path advances an alternative argument that is equally inconsistent with the statutory scheme for tax-exempt organizations. To do so, Freedom Path draws from a separate body of law – involving federal campaign finance requirements – to argue that communications may not qualify as political campaign intervention unless they use so-called "magic words," such as "vote for" or "vote against" a particular candidate. That reliance is misplaced.

To start, courts have found that less-direct support of (or opposition to) political candidates also violates Congress's intent not to subsidize political campaign intervention under § 501(c). In *Ass'n of the Bar of the City of New York v. Comm'r*, the Second Circuit considered an association's ratings of judicial candidates when it upheld the IRS's determination that the association was not exempt under § 501(c)(3). The court rejected the association's assertion that its "rating activity involves merely the collection and limited dissemination of objective data," and concurred in the Tax Court's finding that it is "obvious that the ratings are published with the hope that they will have an impact on the voter." *Ass'n of the Bar of the City of New York v. Comm'r*, 858 F.2d 876, 879, 880 (2d Cir. 1988).

7

Finding no quarter in the tax-exemption laws that govern this case, Freedom Path attempts to import the so-called "express advocacy" or "magic words" test from cases deciding whether federal election statutes are unconstitutionally vague. In particular, Freedom Path points to *Buckley v. Valeo*, 424 U.S. 1 (1976), "and its progeny." Doc. 54-1 at 28. The "magic words" test derives from the portion of *Buckley* that interpreted statutory limits on expenditures made "relative to a clearly identified candidate." *See Buckley*, 424 U.S. at 40-44. It was the "relevant to" part of the statute that the Supreme Court found to be too vague – when criminal penalties were at stake – to permit a construction short of requiring so-called "magic words" such as "vote for" or "vote against" to tie the expenditures to "a clearly defined candidate." *Id*.

Similarly, the Court found that the same type of "magic words" were required for a constitutional interpretation of another part of the campaign-finance statute. *Id*. at 74-80. This part of the statute required every person to report "contributions" and "expenditures" made each year, other than to political committees or candidates. *Id*. at 74-75. The statute defined "contributions" and "expenditures" in terms of using money "for the purpose of . . . influencing" the election or nomination of a candidate for federal office. *Id*. at 77. Here, it was the statute's "for the purpose of . . . influencing" language that gave the Court pause over whether the reporting provision was too vague. *Id*. at 78.

Yet the "relative to" language that the Court found to be problematic – in the context of a campaign-finance statute that carried criminal penalties – does not appear in any definition of "political campaign intervention" in the tax-law context. Nor does the language "for the purpose of . . . influencing" a political nomination or election.

Even if this Court were called on to construe those terms in the context of this case, *Buckley* would not require the same constricted reading. Whatever the Constitution might

8

demand for specificity as to a criminal statute should not set the bar for a civil statute. *See Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 498 (1982) ("The degree of vagueness that the Constitution tolerates—as well as the relative importance of fair notice and fair enforcement—depends in part on the nature of the enactment."). That is especially so when a statute bans no conduct or speech whatsoever, like § 501(c)(4) in this case, and instead involves the award of an optional tax subsidy. *See Taxation With Representation of Washington v. Regan*, 461 U.S. at 544; *Mobile Republican Assembly v. United States*, 353 F.3d 1357, 1361 (11th Cir. 2003) ("We believe that section 527(j) falls squarely under *Regan*. Congress has enacted no barrier to the exercise of the appellees' constitutional rights. Rather, Congress has established certain requirements that must be followed in order to claim the benefit of a public tax subsidy.").[1]

Given the different contexts involved, it is not surprising (and as this Court already noted in deciding the parties' original cross-motions for summary judgment) that "Congress has explicitly warned courts and agencies not to import [the Federal Election Campaign Act]'s 'electioneering communications' concept into the tax code's 'political campaign intervention' context." Doc. 48 at 58. The same principle holds for the jurisprudence interpreting those

---

[1] Freedom Path provides no basis for its bald claim that "no tax 'subsidies' are actually at issue here." Doc. 54-1 at 32. To the contrary, courts repeatedly have made clear that, for example, the availability of federal tax exemption for the entity itself, without tax-deductible contributions, suffices. *See, e.g., Regan,* 461 U.S. at 544 ("Both tax exemptions and tax-deductibility are a form of subsidy that is administered through the tax system. . . . The system Congress has enacted provides this kind of subsidy *to non profit civic welfare organizations generally*, and an additional subsidy to those charitable organizations that do not engage in substantial lobbying. In short, Congress chose not to subsidize lobbying as extensively as it chose to subsidize other activities that non profit organizations undertake to promote the public welfare.") (emphasis added); *Mobile Republican Assembly*, 353 F.3d at 1361 ("public tax subsidy" for § 527 political organizations).

statutes. *Buckley* and its progeny do not govern the meaning of "political campaign intervention" for federal tax purposes.

III.    **Freedom Path's argument that "primarily" means that it may devote up to 50% of its activities to political campaign intervention contravenes Congress's requirement that an organization exempt from tax under § 501(c)(4) must "exclusively" promote social welfare.**

Congress has mandated that an organization must operate "exclusively" for the promotion of social welfare to qualify as an organization exempt from tax under § 501(c)(4). Although defendants acknowledge that the overall statutory context shows that Congress did not intend "exclusively" to mean "solely," Freedom Path's position dilutes the term way too much. It does so by relying on a Treasury Regulation that first *reinforces* the statutory language by stating that § 501(c)(4) status is limited to non-profit organizations that are "operated exclusively for the promotion of social welfare," 26 C.F.R. § 1.501(c)(4)-1(a)(1)(ii), although the regulation goes on to state that:

> An organization is operated *exclusively* for the promotion of social welfare if it is *primarily* engaged in promoting in some way the common good and general welfare of the people of the community. An organization embraced within this section is one which is operated *primarily* for the purpose of bringing about civic betterments and social improvements.

26 C.F.R. § 1.501(c)(4)-1(a)(2) (emphasis added). Freedom Path attempts to interpret that regulation in a way that is inconsistent with Congress's mandate, which it may not do.

The statutory language of "exclusively" means the presence of a substantial non-exempt purpose precludes exemption.

Since the Supreme Court decided *Better Business Bureau of Washington v. United States*, 326 U.S. 279 (1945), every circuit court to consider the question has found the word "exclusively," as used in § 501(c)(4), plainly means an organization cannot qualify for

10

§ 501(c)(4) status if it carries on a substantial non-exempt purpose.[2] Freedom Path has provided no foundation for this Court to depart from that longstanding interpretation here.

Freedom Path correctly asserts that statutes, such as the Internal Revenue Code, "should be interpreted where possible in their ordinary, everyday senses." Doc. 54-1 at 27 (quoting *Malat v. Riddell*, 383 U.S. 569, 571 (1966)). But Freedom Path does not address the actual statutory language before this Court. Section 501(c)(4) requires an organization to be operated "exclusively" to promote social welfare. No reasonable definition of "exclusively" would permit an organization to engage in a substantial amount of non-exempt activity. *See Exclusively, Oxford English Dictionary* (online version) (definitions of "exclusively" include "solely," or "[s]o as to exclude all except some particular object, subject, etc.").

Rather than address § 501(c)(4)'s statutory language, Freedom Path elects to analyze the meaning of the term "primarily," a word Congress did not use in crafting this statute. By way of contrast, Congress did use that term in defining a "political organization" as an organization "organized and operated primarily" for accepting contributions and making expenditures for a § 527 exempt function. 26 U.S.C. § 527(e)(1). This difference in statutory language is neither meaningless nor arbitrary. It was Congress's intent that, "to qualify as a tax-exempt political

---

[2] *See, e.g., Lake Forest*, 305 F.2d at 820 (concluding that the organization in question was not operated "'exclusively for the promotion of social welfare', since they partake largely of the nature of an economic and private cooperative undertaking"); *People's Educ. Camp Soc.*, 331 F.2d at 932 (citing *Better Business Bureau* for the proposition that the presence of a single non-exempt purpose, if substantial in nature will destroy the exemption regardless of the number or importance of truly exempt purposes); *Contracting Plumbers*, 488 F.2d at 686 ("we adhere to the rule that the presence of a single substantial non-exempt purpose precludes exempt status"); *Mut. Aid Ass'n of Church of the Brethren v. United States*, 759 F.2d 792, 796 (10th Cir. 1985) ("The presence of a substantial non-exempt purpose . . . precludes MAA's exempt status" under § 501(c)(3) and (c)(4)); *Memorial Hermann v. Comm'r*, 120 F.4th 215, 220 (5th Cir 2024) ("Since § 501(c)(3) and (c)(4) both use the crucial phrase 'operated exclusively,' the *Better Business Bureau* standard applies under both provisions.").

organization, an organization does not have to be exclusively political." S. Rep. No. 93-1357, at 27 (1974). Congress made clear that § 527 political organizations could carry on social activities or support or oppose ballot propositions without jeopardizing their exempt status, so long as candidate advocacy was their primary activity. *Id.* To allow these political organizations greater latitude in their non-exempt activity than § 501(c)(3) or (c)(4) organizations, Congress chose a different word than § 501(c)(3) and (c)(4)'s "exclusively" to describe the extent to which the organization must be dedicated to its exempt purpose.

The Supreme Court confronted the question of how much non-exempt activity was permissible for a tax-exempt organization in *Better Business Bureau*. That case concerned an exemption from Social Security tax, which was drawn from the predecessor to modern § 501(c)(3). *Better Business Bureau*, 326 U.S. at 284. The Court found that the "operated exclusively" language in the statute "plainly means that the presence of a single non-[exempt] purpose, if substantial in nature, will destroy the exemption regardless of the number or importance of truly [exempt] purposes." *Id*. at 283. This standard has been fundamental to the understanding of tax-exemption under § 501 ever since. *See Stevens Bros. Found. v. Comm'r,* 324 F.2d 633, 638 (8th Cir. 1963) ("The meaning of the term 'exclusively' as used in the statutes is no longer open to debate.").

Freedom Path incorrectly characterizes the application of the *Better Business Bureau* standard to § 501(c)(4) as a "newfound" standard that courts have "implicitly rejected." Doc. 54-1 at 34. Rather than being implicitly rejected, this standard has been explicitly adopted by the courts. *See, e.g., Contracting Plumbers*, 488 F.2d at 686 (applying the standard in a § 501(c)(4) case).

12

As recently as 2024, the Fifth Circuit applied this standard to § 501(c)(4) exemption. *See Memorial Hermann Accountable Care Organization v. Comm'r*, 120 F.4th 215, 219-20 (5th Cir 2024). The applicant in *Memorial Hermann* argued that the Tax Court had incorrectly assessed whether social welfare was its "exclusive" purpose and that the proper test of exemption was to determine its "primary" purpose. *Id.* at 219. The Circuit Court, deciding that "[i]t makes little sense to treat the same phrase differently in two neighboring paragraphs of the same statute," affirmed that the standard of *Better Business Bureau* applies in § 501(c)(4) cases. *Id.* (internal citations omitted).

"Primarily" as used in Treasury Regulation § 1.501(c)(4)-1 does not permit a substantial non-exempt purpose.

The meaning of the term "primarily" in the Treasury Regulation must be informed by the language of the statute it is interpreting, i.e., "exclusively." Although courts so far have purposely avoided identifying a single numerical threshold for non-exempt activities, at least one court, in the circumstances before it, denied exempt status where 21% of the organization's activities were non-exempt. *See Church in Bos. v. Comm'r*, 71 T.C. 102, 108 (1978). Freedom Path's argument – that the regulation's use of "primarily" means that it may devote up to 50% of its activities to non-exempt pursuits – stretches the concept of "exclusively" past its breaking point. And it is Congress's meaning that must prevail.

Indeed, courts have interpreted "primarily" as used in the regulation as synonymous with the *Better Business Bureau* standard prohibiting a substantial non-exempt purpose: "The word 'exclusively' as used in the statute has not been given a strict interpretation, so as to foreclose every operation for a non-exempt purpose no matter how insubstantial, but rather has been interpreted to mean 'primarily.' Stated another way, 'the presence of a single * * * (non-exempt) purpose, if substantial in nature, will destroy the exemption regardless of the number or

13

importance of truly * * * (exempt) purposes.'" *People's Educ. Camp Soc.*, 331 F.2d at 931 (2d Cir. 1964) (quoting *Better Business Bureau*, 326 U.S. at 283) (internal citations omitted); s*ee also Contracting Plumbers*, 488 F.2d at 686 (finding that the regulation did not liberalize the statute).

Freedom Path makes no attempt to read the Treasury Regulation consistently with the statute. As shown above, it is possible to do so. Instead, Freedom Path focuses solely on the language of the regulation and urges an interpretation of it that is at odds with the statute. But the Treasury Regulation should be neither read nor applied in a way that is inconsistent with the statute's text.

Agency practice also does not change the statutory requirement.

Freedom Path wrongly focuses on statements by senior IRS officials and an initiative to reduce the backlog of applications for § 501(c)(4) status to argue that an acceptable level of non-exempt activity may approach 50%, or must at least be 40%. But the words and actions Freedom Path identifies do not change the meaning of "operated exclusively" in § 501(c)(4).

Freedom Path points to a public statement by a former IRS Commissioner and other agency statements that acknowledge that the IRS at some times has interpreted the "primarily" language of the Treasury Regulation to mean that an organization may engage in nearly 50% of non-exempt activity without jeopardizing its tax-exempt status under § 501(c)(4). But it is Congress's words that control, and agency statements cannot alter the clear meaning of the statute.

Freedom Path also contends that § 501(c)(4) must be construed in light of an IRS backlog-reduction initiative that approves § 501(c)(4) applications by organizations that agree to

14

certify that they direct at most 40% of their time and money to political campaign intervention.[3]

Yet this initiative did not change the statutory definition of what it means to "operate exclusively

to promote social welfare."[4] Nor did the IRS agree that tax-exempt qualifications of the

participating applicants would be free from further review. Agencies, including the IRS, may

establish settlement initiatives that do not require imposition of all statutory requirements, fines

or penalties. *See, e.g., Maze v. I.R.S.*, 862 F.3d 1087, 1089–90 (D.C. Cir. 2017) (describing

initiative to compromise penalties for failure to disclose offshore accounts); *Harrison v. I.R.S.*,

No. 20-CV-828 (CRC), 2021 WL 930266, at *2 (D.D.C. Mar. 11, 2021) (same).

    And in discussing that initiative, the IRS expressly rejected the notion that there is a

precise numeric interpretation of what "primarily" means in the IRS regulation. As explained in

the document, the IRS chose a 40% time and expenditure threshold (with at least 60% dedicated

to social welfare) "with the understanding that no precise definition exists in relevant revenue

rulings, cases, or regulations for 'primarily' in this specific context and that the statute does not

provide clear guidance." *See* Charting a Path Forward at the IRS: Initial Assessment and Plan of

Action (June 24, 2013), https://perma.cc/NW3D-LBF9. Regardless, "the IRS's embrace of a

legal standard cannot supplant [a court's] independent interpretation of the statutory text."

*Memorial Hermann*, 120 F.4th at 220.

---

[3] Notably, the expedited process's definition of political campaign intervention differs from that generally applicable to § 501(c)(4), which may have justified a more liberal allowance (40%) of non-exempt operations.

[4] *See* Ex. 17, ADMIN-000199-205, at 201 (IRS Letter 5228 ("The standards and thresholds reflected in the representations are criteria for eligibility for expedited processing rather than new legal requirements.")).

<u>In any event, it is unnecessary to decide this point because more than 50% of Freedom Path's operations do not promote social welfare.</u>

In a detailed analysis of Freedom Path's communications, encompassing all its television ads, its mailings and its web-based publications, the defendants have shown that approximately 78% of Freedom Path's activities (at least) qualify as political campaign intervention and thus fail to promote social welfare within the meaning of § 501(c)(4). *See* Doc. 55-1 at 19-26. In contrast, Freedom Path attempts to focus the dispute on just two television ads because those ads were allegedly disputed by the IRS during Freedom Path's application process. Freedom Path's approach is flawed because this Court must make a *de novo* determination whether Freedom Path has proven that it qualifies for tax-exempt status, based on the entirety of the record that was before the agency. *See, e.g., Polm Family Found., Inc. v. United States*, 655 F. Supp. 2d 125, 127-28 (D.D.C. 2009), *aff'd*, 644 F.3d 406 (D.C. Cir. 2011) (citing *Airlie Found. v. I.R.S.*, 283 F. Supp. 2d 58, 61-62 (D.D.C. 2003)); *Basic Unit Ministry of Alma Karl Schurig v. Comm'r*, 670 F.2d 1210, 1213 (D.C. Cir. 1982). In doing so, "[t]he court is to base its determination upon the reasons provided by the Internal Revenue Service in its notice to the party making the request for a determination [i.e., the final determination notice], or based upon any new argument which the Service may wish to introduce at the time of the trial." S. Rep. No. 94-938(I), at 588 (1976); *see also* H.R. Rep. No. 94-658, at 285 (1976).

At most, only 23% of Freedom Path's activity may be devoted to social welfare, and that fails under any possible standard of what it means to be operated "exclusively" for social welfare. That includes Freedom Path's own test, which would require 50% of its activities to promote social welfare.

16

**CONCLUSION**

The Court should deny Freedom Path's renewed motion for summary judgment and enter judgment in favor of the government. Freedom Path bears the burden of establishing eligibility for tax exemption, and it has not done so. Freedom Path's front-line position relies on classifying political campaign intervention as promoting social welfare, which Congress's overall statutory scheme for tax-exempt organizations does not permit. Freedom Path's alternative "magic words" test is neither required nor appropriate for tax purposes. And Freedom Path's argument that it should be allowed to devote up to 50% of its activities to political campaign intervention contravenes Congress's requirement that an organization exempt from tax under § 501(c)(4) must "exclusively" promote social welfare. Indeed, a review of the administrative record confirms that the organization's activities preclude § 501(c)(4) status because Freedom Path is not operated exclusively for the promotion of social welfare, within the meaning of the statute. The defendants therefore ask the Court to deny Freedom Path's summary judgment motion and dismiss its complaint.


Dated: March 27, 2026

17

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

JOSHUA WU
Deputy Assistant Attorney General
Tax Litigation Branch

*/s/ Laura M. Conner*
LAURA M. CONNER (VA Bar No. 40388)
Assistant Director
JOSEPH A. SERGI (DC Bar No. 480837)
Senior Litigation Counsel
Tax Litigation Branch
Civil Division, U.S. Department of Justice
Post Office Box 227
Washington, DC 20044
Tel: (202) 514-2986
Fax: (202) 514-6866
laura.m.conner@usdoj.gov
joseph.a.sergi@usdoj.gov

Counsel for Defendants