**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

FREEDOM PATH, INC.,

*Plaintiff*,

v.                                                    Civil Action No.: 1:20-cv-01349-JMC

INTERNAL REVENUE SERVICE, *et al.*

*Defendants*.

**FREEDOM PATH'S REPLY BRIEF IN SUPPORT OF**
**MOTION FOR SUMMARY JUDGMENT**

**TABLE OF CONTENTS**

Page

Table of Authorities.................................................................................................................. ii

Introduction...............................................................................................................................1

Argument ..................................................................................................................................3

I.    The simplest way to resolve this case is holding that civic speech—including candidate express advocacy—promotes "social welfare" under Section 501(c)(4)'s plain text, because civic speech is Freedom Path's "exclusive" activity................................................................................................................. 3

II.    If necessary, this Court should construe the "political activity" inquiry according to Freedom Path's proposed express advocacy or its functional equivalent test, rather than Defendants' vague "indirect support" standard. .................. 7

    A.    Freedom Path's express advocacy or its functional equivalent test satisfies both constitutional requirements and this Court's directives. ................................. 8

    B.    Defendants' "indirect support or opposition" element recreates the same constitutional defects this Court already rejected..................................................... 10

III.    If necessary, this Court should construe the "primary activity" inquiry to require at least 50% of an organization's activity, contrary to Defendants' proposal of 10% or maybe 21%. ...................................................................... 12

    A.    This Court should adopt Freedom Path's proposed 50% threshold for determining an organization's "primary activity," which is consistent with text, longstanding agency practice, and has been acquiesced to by Congress. ............................................................................................................. 12

    B.    Defendants' proposed "significant activity" test is not required by the statute nor does it provide sufficient notice to prospective Section 501(c)(4) organizations. ....................................................................................... 14

IV.    Applying the proper standards, Freedom Path's express advocacy is at most 39% of its activities, and Defendants' contrary 78% figure is methodologically unsound. ........................................................................................ 17

    A.    Under any permissible standard, Freedom Path spent at most 39% on express advocacy or its functional equivalent. ...................................................... 17

    B.    The Federal Election Commission declining to classify Freedom Path as a "political committee" under FECA powerfully corroborates that its activities were primarily issue advocacy—not political campaign intervention.................................................................................................................. 19

Conclusion ...............................................................................................................................19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ass'n of the Bar of the City of N.Y. v. Comm'r*,
858 F.2d 876 (2d Cir. 1988) ............................................................................................... 11

*Better Business Bureau v. United States*,
326 U.S. 279 (1945) ............................................................................................................ 14

*Big Mama Rag Inc. v. United States*,
631 F.2d 1030 (D.C. Cir. 1980) ........................................................................................ 8, 11

*Bowen v. Georgetown Univ. Hospital*,
488 U.S. 204 (1988) ............................................................................................................ 13

*Buckley v. Valeo*,
424 U.S. 1 (1976) ..................................................................................................... 1, 8, 9, 18

*Christopher v. SmithKline Beecham Corp.*,
567 U.S. 142 (2012) ............................................................................................................ 13

*Church in Bos. v. Comm'r*,
71 T.C. 102 (1978) .............................................................................................................. 16

*Citizens United v. FEC*,
558 U.S. 310 (2010) .............................................................................................................. 4

*FEC v. Wis. Right to Life, Inc.*,
551 U.S. 449 (2007) ...................................................................................................... 1, 8, 18

*Loper Bright Enters. v. Raimondo*,
603 U.S. 369 (2024) .............................................................................................................. 3

*Malat v. Riddell*,
383 U.S. 569 (1966) ............................................................................................................ 15

*McConnell v. FEC*,
540 U.S. 93 (2003) .............................................................................................................. 18

*Mem'l Hermann Acct. Care Org. v. Comm'r*,
120 F.4th 215 (5th Cir. 2024) ............................................................................................ 15

*Mun. Bond Corp. v. Comm'r*,
341 F.2d 683 (8th Cir. 1965) .............................................................................................. 15

*Polselli v. IRS,*
    598 U.S. 432 (2023).................................................................................................5

*Pulsifer v. United States*,
    601 U.S. 124 (2024).................................................................................................6

*Rawat v. Comm'r*,
    108 F.4th 891 (D.C. Cir. 2024)...............................................................................5

*Vill. of Hoffman Ests. v. Flipside, Hoffman Ests. Inc.*,
    455 U.S. 489 (1982).................................................................................................9

*Washington All. of Tech. Workers v. United States Dep't of Homeland Sec.*,
    50 F.4th 164 (D.C. Cir. 2022)...............................................................................15

*World Family Corp. v. Comm'r*,
    81 T.C. 958 (1983)................................................................................................16

**Statutes**

26 U.S.C. § 501................................................................................................................1, 3

26 U.S.C. § 527.....................................................................................................................6

52 U.S.C. § 30101..............................................................................................................19

52 U.S.C. § 30104.........................................................................................................10, 19

52 U.S.C. § 30111..............................................................................................................10

**Other Authorities**

26 C.F.R. § 1.501(c)(4)-1.....................................................................................................9

Rev. Rul. 68-656, 1968-2 C.B. 216, 1968 WL 15166........................................................4

S. Rep. No. 93-1357 (1974)............................................................................................6, 14

iii

**INTRODUCTION**

Freedom Path "exclusive[ly]" engages in civic speech intended to "promot[e] [the] social welfare." 26 U.S.C. § 501(c)(4). It speaks primarily about issues that it finds important. And it also, sometimes, speaks about the political candidates that it believes will bring about social betterment. So the IRS erred when it denied Freedom Path's application for Section 501(c)(4) status as a "[c]ivic league[] or organization[] not organized for profit but operated exclusively for the promotion of social welfare." 26 U.S.C. § 501(c)(4). In response to this Court's order, only Freedom Path has provided the necessary "Primary Activity inquiry and Political Activity inquir[ies] that are (a) not unconstitutionally vague and (b) appropriately rooted in the statutory and regulatory scheme, and constitutional principles, that govern this tax exemption in light of the Court's findings." ECF 48 at 60.[1]

The simplest way to decide this case is holding that the plain statutory meaning of "promotion of social welfare" includes express candidate advocacy. If this Court agrees, both the "Primary Activity inquiry and Political Activity inquiry" are straightforward: Freedom Path's exclusive activity is civic speech that promotes social welfare under Section 501(c)(4), and Freedom Path would not be a Section 527 organization because "influencing elections" is not its "primary" purpose.

But if this Court disagrees that all manner of civic speech satisfies Section 501(c)(4)'s statutory standards, it should both: (1) adopt a construction of "political campaign intervention" for the "Political Activity inquiry" that hews to the express advocacy or its functional equivalent tests, *FEC v. Wis. Right to Life, Inc.*, 551 U.S. 449 (2007) (controlling plurality op. of Roberts, C.J.) ("*WRTL*"); *Buckley v. Valeo*, 424 U.S. 1 (1976) (per curiam); and (2) adopt a construction of

---

[1] All pin cites in docket citations are to internal document pagination, not ECF pagination.

"primary" for the "Primary Activity inquiry" that imposes the 50% threshold, which was in use when Freedom Path applied for Section 501(c)(4) status.

Defendants' contrary interpretations fail to satisfy the standards that both the Constitution and this Court demand.

For the "Political Activity inquiry," the IRS has traded eleven vague factors for an undefined phrase: a communication that "indirectly supports or opposes" a candidate. That standard carries no limiting principle. It is the prior test collapsed into a single phrase, and it invites the same arbitrary enforcement this Court already condemned. ECF 48 at 47-50. And the IRS's primary-activity standard is no standard at all. The government says only that 10% non-exempt activity is permissible and 21% is not. It says nothing about the territory in between. Freedom Path's proposed 50% threshold gives clear, fair notice resolving that gap. And it also comports with the plain meaning of "primary," unlike the IRS's proposal.

On the facts, all parties agree that Freedom Path's undisputed express advocacy totaled $360,748.91. Against even the government's own denominator, that figure is approximately 39% of Freedom Path's activities. The government reaches 78% only by classifying two advertisements—"Three Men" and "Repeal It"—as political campaign intervention. It made both classifications using the same methodology this Court already declared to be unconstitutionally vague. Remove those two advertisements and the government's figures fall below 50% under any calculation. Neither advertisement contains express advocacy. Neither mentions an election, a campaign, or a candidacy. Neither urges anyone to vote.

Freedom Path's civic speech all qualifies as the promotion of social welfare under Section 501(c)(4)'s plain text. Alternatively, Freedom Path's express advocacy fell well below any

permissible primary-activity threshold. The IRS's proposed standards fail constitutional scrutiny. The Court should grant Freedom Path's motion and deny Defendants' cross-motion.

**ARGUMENT**

I.    **The simplest way to resolve this case is holding that civic speech—including candidate express advocacy—promotes "social welfare" under Section 501(c)(4)'s plain text, because civic speech is Freedom Path's "exclusive" activity.**

Civic speech "promot[es] . . . social welfare" within the meaning of 26 U.S.C. § 501(c)(4). Freedom Path has explained why that is true based on plain text and statutory context. *See* ECF 54-1 at 14-20; ECF 62 at 3-12. Freedom Path thus "exclusively" engaged in speech that "promot[es] . . . social welfare" because the undisputed facts demonstrate that Freedom Path engaged solely in such civic speech. *E.g.*, ECF 54-1 at 32-35; ECF 62 at 24-26; *see* ECF 63-1 at 8-14. Defendants' arguments to the contrary are unpersuasive.

**A.** As an initial matter, Defendants' arguments largely ignore key statutory text. They insist that "political campaign intervention" is categorically excluded from "promot[ing] the social welfare." *See* ECF 63 at 3-6. Yet, "political campaign intervention" is not a statutory term in Section 501(c)(4). Nor does Section 501(c)(4) distinguish between—or even mention—"issue advocacy" and "candidate advocacy." It is an administrative preference, not a statutory command, and one that cannot survive independent judicial review after *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 412 (2024).

Defendants have no persuasive textual anchor for excluding candidate advocacy from "the promotion of social welfare," and their opposition supplies none. They offer no principled reason why civic speech connecting a legislator's voting record to a pending legislative outcome, or advocating for a candidate, does not promote the social welfare.

**B.** Instead, Defendants argue that advocating for or against a candidate "substantially advances the private interests" of that candidate or party, rather than the community as a whole.

3

ECF 63 at 6; ECF 61 at 4-5 (arguing that "anonymous election spending" from 501(c)(4)s harms voters). This reasoning both lacks foundation in the statutory text and would prove too much.

Freedom Path has explained why all manner of civic speech promotes the social welfare. ECF 54-1 at 14-20; ECF 62 at 4-9. As the Supreme Court has long recognized, political speech benefits society because it gives citizens more perspectives and voices to weigh in a democracy. *See id.*; *e.g.*, *Citizens United v. FEC*, 558 U.S. 310, 339 (2010). The IRS's own longstanding revenue ruling concedes that issue advocacy "seeking of legislation" promotes social welfare because "society benefits from an informed citizenry." Rev. Rul. 68-656, 1968-2 C.B. 216, 1968 WL 15166, at *1. Seeking legislation, too, would "substantially advance[] the private interests" of some. ECF 63 at 6. But it also promotes the social welfare by increasing the speech in our society to produce a more informed body politic. The social-welfare value of civic speech does not evaporate because some individuals may also benefit too.

Amicus Institute for Free Speech has rightly explained that civic speech—including election campaign advocacy—promotes social welfare under Section 501(c)(4)'s original meaning. ECF 64-1 at 19-20 (examining exemption's text and historical background). The social-welfare exemption first appeared in the Revenue Act of 1913, and the context surrounding it "strongly suggests Congress meant the phrase to encompass nonprofits not otherwise named in the statute, and to liberalize the Bureau of Internal Revenue's approach to nonprofit advocacy groups." *Id.* at 20 (citation omitted). In fact, social welfare groups of that era used election campaign advocacy in promoting social welfare. *Id.* (explaining that the NAACP's flagship publication, *The Crisis*, featured express candidate endorsements since its founding).

A contrary interpretation would raise significant administrability concerns, which mirrors the vagueness problems in other parts of Defendants' arguments. Any issue advocacy that aligns

with one political party's platform—as much civic speech does—could be recast as advancing private partisan interests. Defendants' principle has no limiting boundary. It would empower the IRS to deny Section 501(c)(4) status to organizations whose issue advocacy happens to favor one side of a contested policy debate. This invites viewpoint discrimination in practice. That is why this Court has already rejected the IRS's 11-factor facts-and-circumstances test based on concerns about viewpoint discrimination. ECF 48 at 49.

**C.** Defendants also have little response to Freedom Path's arguments that Congress's disparate treatment of Section 501(c)(3) and Section 501(c)(4) recognizes that civic speech qualifies as promoting the social welfare. ECF 63 at 4-6.

Congress has amended Section 501(c)(3) twice to restrict political speech, without altering Section 501(c)(4). In 1934, Congress barred Section 501(c)(3) organizations from devoting a "substantial part" of their activities to influencing legislation. In 1954, it expressly prohibited any "participation or intervention" in political campaigns. *See* ECF 54-1 at 16-19. Both times, Congress reviewed Section 501(c)(3) and Section 501(c)(4) together. Both times, it refused to restrict 501(c)(4) organizations' political speech, leaving § 501(c)(4)'s test as the "promotion of social welfare." Under traditional principles of statutory interpretation, Congress's deliberate omission in a neighboring statutory provision is presumptively intentional. *E.g.*, *Polselli v. IRS*, 598 U.S. 432, 439 (2023); *Rawat v. Comm'r*, 108 F.4th 891, 898 (D.C. Cir. 2024).

**D.** Instead of addressing this crucial relationship between Section 501(c)(3) and Section 501(c)(4), Defendants focus on Section 527. Specifically, Defendants incorrectly claim that interpreting the "social welfare" in Section 501(c)(4) would render Section 527 superfluous because political organizations could simply qualify under Section 501(c)(4). ECF 63 at 4-5; *see* ECF 59 at 5-6 ("organizations wishing to engage in political advocacy [should] organize as § 527

political organizations or [] create a separate § 527 segregated account"). That is incorrect, as Freedom Path has explained. ECF 62 at 10-12; *see* ECF 54-1 at 18-19.

Defendants have the problem backwards. It is the *government's* reading that strands organizations in a no-man's-land. Under the IRS's theory, an organization devoting 21-50% (or perhaps 11.1-50%) of its resources to express candidate advocacy loses *both* Section 501(c)(4) *and* Section 527 tax-exempt status. That is because Section 527 requires political activity to be the organization's *primary* purpose. *See* 26 U.S.C. § 527(e)(1). This gap would irrationally mangle Congress's statutory text, structure, and design. Congress did not take away such organizations' tax exemption by exiling them to a gap between these two statuses. *See* ECF 62 at 10-12.

Freedom Path's reading creates no such gap. Section 527 status applies to organizations whose primary purpose is influencing elections. And Section 501(c)(4) organizations are separately taxed, under Section 527(f)(1), on their electoral expenditures at the political-organization rate. ECF 62 at 5-6. Section 527(f)(1) would be pointless if those expenditures already disqualified the organization entirely. Congress did not enact surplusage. *See Pulsifer v. United States*, 601 U.S. 124, 143 (2024). Congress acknowledged such Section 501(c)(4) organizations would engage in *some* candidate advocacy while retaining their 501(c)(4) status—and would be taxed on their electoral expenditures at the Section 527 political-organization rate. Defendants offer no response to this structural point.

If plain text were not enough, in the Senate Report accompanying Section 527's enactment, Congress stated explicitly that Section 501(c)(4) organizations "may engage in political campaign activities." S. Rep. No. 93-1357, at 7505 (1974). Congress enacted Section 527 on that assumption—not to negate it.

6

**E.** Otherwise, Defendants' lead argument is that Freedom Path "fails to explain how its activities promote social welfare." ECF 63 at 2. Freedom Path has explained in detail what its relevant activities were and why they promote social welfare. ECF 54-1 at 21; ECF 62 at 12-13; *see* ECF 54-1 at 31-35; ECF 62 at 24-26. All civic speech—issue advocacy, speech mentioning legislators or candidates, and express candidate advocacy—increases the information citizens have to exercise their civic duties as an informed electorate in our democracy. *See* ECF 54-1 at 14-20; ECF 62 at 4-9. Defendants do not dispute what Freedom Path's communications said. Instead, the dispute between the parties goes solely to whether those activities satisfy the statutory standard for the "promotion of social welfare." They do.

*    *    *

Adopting Freedom Path's proposed interpretation of "promot[ing] the social welfare" is the simplest way to resolve this case. It also provides the simplest forward-looking rule for the IRS to apply. But if this Court disagrees with Freedom Path's arguments above in Part I, it should alternatively: (1) adopt Freedom Path's definition of "political campaign intervention," addressed below in Part II; and (2) adopt Freedom Path's position that "primary activity" requires 50% or more of an organization's activities (which also happens to be the IRS' longstanding position), addressed below in Part III. When applying those standards, Freedom Path also qualifies for Section 501(c)(4), as explained below in Part IV.

**II.     If necessary, this Court should construe the "political activity" inquiry according to Freedom Path's proposed express advocacy or its functional equivalent test, rather than Defendants' vague "indirect support" standard.**

This Court does not need to import a "political campaign intervention" test into Section 501(c)(4) at all, as Freedom Path explained above. But, assuming for the sake of argument that some form of "political campaign intervention" does not qualify as "promot[ing] the social welfare," Freedom Path has provided the only administrable test that satisfies this Court's concerns

7

about vagueness and viewpoint discrimination. Defendants, by contrast, have replaced the IRS's vague 11-factor facts-and-circumstances test with a single amorphous inquiry: whether a communication "indirectly supports or opposes" a candidate. That vague test reproduces all of the Court's prior concerns.

**A.      Freedom Path's express advocacy or its functional equivalent test satisfies both constitutional requirements and this Court's directives.**

Freedom Path's express advocacy or its functional equivalent test supplies the "explicit guidelines" needed to "avoid arbitrary and discriminatory enforcement." *Big Mama Rag Inc. v. United States*, 631 F.2d 1030, 1035 (D.C. Cir. 1980); *see* ECF 64-1 at 14-16 (Freedom Path's proposed express-advocacy or its functional equivalent test supplies the only administrable bright-line standard that avoids the vagueness this Court already rejected); ECF 59 at 17 (similar).

These inquiries ask only two objective questions: (1) whether a communication "expressly advocate[s] the election or defeat of a clearly identified candidate," *Buckley*, 424 U.S. at 80; (2) or whether it is "susceptible of no reasonable interpretation other than as an appeal to vote for or against a specific candidate," *WRTL*, 551 U.S. at 470 (controlling plurality op. of Roberts, C.J.). Those inquiries produce consistent, reviewable answers. They do not depend on an examiner's impressions about whether a healthcare advertisement was politically motivated or which candidate it tended to help.

The IRS raises two objections to Freedom Path's express advocacy standard: (1) that *Buckley* arose in a criminal-penalty context and therefore purportedly sets too demanding a vagueness floor for a civil tax statute, ECF 63 at 8-9; and (2) that Congress warned courts not to import FECA's specific campaign-finance standards into the tax code, ECF 63 at 9. Both arguments fail—and the second cuts completely against Defendants.

8

First, *Buckley*'s express advocacy test cured the vagueness inherent in distinguishing between issue advocacy and electoral advocacy. *Buckley*, 424 U.S. at 77-80. So *Buckley*'s rationale cannot be limited to the precise words that Congress used in FECA to make that amorphous distinction. Whenever and however Congress attempts to regulate campaign advocacy and issue advocacy, it must draw sharp, bright lines heeding *Buckley*'s warnings. Here, the IRS has attempted to divide issue advocacy from "direct or indirect participation or intervention in political campaigns on behalf of or in opposition to any candidate." 26 C.F.R. § 1.501(c)(4)-1(a)(2)(ii). And thus it raises the same issues that *Buckley* confronted and resolved in favor of adopting the express advocacy construction.

Nor does it matter that *Buckley* expressly concerned criminal penalties. This Court applied heightened vagueness standards to the IRS's previous facts-and-circumstances test because the standard directly regulated speech. ECF 48 at 20. Defendants' invocation of *Village of Hoffman Estates v. Flipside, Hoffman Estates Inc.*, 455 U.S. 489, 498 (1982), actually illustrates the point. ECF 63 at 9. *Hoffman Estates* acknowledged that vagueness concerns intensify when a law "reaches a substantial amount of constitutionally protected conduct." 455 U.S. at 494. Such heightened vagueness review is not limited only to criminal statutes. *Id.* Here, the IRS's "indirect support" standard regulates speech: Every issue advertisement touching a contested policy position falls within its sweep. The IRS does not engage with *Hoffman Estates*'s own caveat—or the multiple Supreme Court cases holding that speech laws also require heightened vagueness review. ECF 48 at 20. And Defendants do not explain why this Court should retreat from its prior heightened-review holding.

Second, Defendants' FECA argument undermines their own position. In particular, Defendants invoke Congress's directive that FECA's "electioneering communications" definition

9

may not "establish, modify, or otherwise affect the definition of political activities . . . for purposes of Title 26." ECF 63 at 9-10; 52 U.S.C. § 30104(f)(7). Freedom Path agrees completely. But it is Defendants' test, not Freedom Path's, that attempts to import FECA's electioneering communications framework. The IRS's proposed standard asks whether a communication was made "during an election campaign" and whether it "supports or opposes a candidate for public office." ECF 55-1 at 10. FECA's electioneering-communications definition asks the same questions—*without* the IRS's conspicuous omission of FECA's protective bright-line time windows and geographic targeting requirements. *See* ECF 62 at 16-17. In contrast, Freedom Path's express advocacy standard is derived from the Supreme Court's constitutional interpretation of the First Amendment's requirements—the same "constitutional principles" this Court directed the parties to honor. ECF 48 at 60. Applying those principles does not import FECA's electioneering communications definition into the tax code.[2] It applies the constitutional floor that any speech regulation must clear, wherever it appears.

### B. Defendants' "indirect support or opposition" element recreates the same constitutional defects this Court already rejected.

By contrast, Defendants' proposed test fails to satisfy this Court's request for a standard that is "not unconstitutionally vague." ECF 48 at 60.

---

[2] Importantly, 52 U.S.C. § 30104(f)(7) only specifically bars importing the "electioneering communications" definition into the tax code. *Id.* ("[n]othing in this subsection [addressing electioneering communications] may be construed . . . "). It does not otherwise prohibit borrowing from campaign finance concepts when interpreting the tax code. And it certainly does not prohibit analyzing the ways that courts have resolved vagueness in the campaign finance context. Moreover, Congress separately has required the FEC and IRS to promulgate "mutually consistent" rules. *See* ECF 64-1 at 1 (citing 52 U.S.C. § 30111(f)). Amicus Institute for Free Speech explains that this congressional command governs how the law should distinguish Section 501(c)(4) from Section 527 organizations. *Id.* Freedom Path's express advocacy test honors that command. Defendants' standard does not.

Defendants propose replacing the IRS's unconstitutionally vague 11-factor facts-and-circumstances test with a new test: whether speech "indirectly []supports or opposes the positions or actions of the candidate." ECF 55-1 at 11. This standard carries no statutory definition, no regulatory gloss, and no limiting principle. It repackages the same 11-factor test the Court rejected, collapsing it into a single undefined phrase. *See* ECF 62 at 14-17. So it presents the same issues as the 11-factor test: it provides "no guidance as to how officials should weigh the factors against one another" and offers no "explicit guidelines" to "avoid arbitrary and discriminatory enforcement." ECF 48 at 49 (quoting *Big Mama Rag*, 631 F.2d at 1035).

Rather than validate Defendants' test, *Association of the Bar* demonstrates its weakness. In that case, the Second Circuit upheld the IRS's determination that a bar association's ratings of judicial candidates constituted political campaign intervention. *Ass'n of the Bar of the City of N.Y. v. Comm'r*, 858 F.2d 876, 879-80 (2d Cir. 1988). The court found it "obvious" that the ratings were "published with the hope that they will have an impact on the voter." *Id.* at 880 (citation omitted). Defendants cite this case to show that indirect support can qualify as political campaign intervention. ECF 63 at 7. But the case illustrates exactly why the government's "indirect support" standard is unworkable. If even neutral, data-driven ratings of judicial candidates can constitute "indirect" support, virtually any issue advertisement mentioning a sitting officeholder becomes suspect. The standard has no discernible outer boundary. That is the definition of vagueness and the precise problem this Court already identified with the IRS's prior facts-and-circumstances test. ECF 48 at 47-50.

The remaining four aspects of the IRS's test do not cure the vagueness of its newly divined "indirect support or opposition" standard. Whether a (1) "communication" (2) was made "by an organization" (3) "during an election campaign" (4) concerning "a candidate for public office"

were never genuinely disputed in this case. ECF 55-1 at 10-12. These factors do not determine the critical question of whether the speech in question is "political campaign intervention"—*i.e.*, asking voters to vote for or against any candidates.[3]

**III.    If necessary, this Court should construe the "primary activity" inquiry to require at least 50% of an organization's activity, contrary to Defendants' proposal of 10% or maybe 21%.**

Again, this Court need not construe what the IRS's regulatory "primary activity" standard entails if it agrees with Freedom Path's proposed interpretation, that all civic speech promotes the social welfare. *See supra* Part I. Freedom Path is exclusively engaged in civic speech promoting the social welfare under that construction and thus would qualify for Section 501(c)(4) status under any test.

But should the Court reject that argument, it should construe the "primary activity" inquiry according to plain text and longstanding agency practice: An organization's "primary" activity is what the organization spends 50% or more of its resources on.

**A.    This Court should adopt Freedom Path's proposed 50% threshold for determining an organization's "primary activity," which is consistent with text, longstanding agency practice, and has been acquiesced to by Congress.**

Freedom Path has proposed a clear and administrable test for an organization's "primary activity": whether the organization spends 50% or more of its resources on that activity. ECF 54-1 at 26-30; ECF 62 at 18-24. This test follows from the plain meaning of "primary," decades-long agency practice, and congressional acquiescence. ECF 54-1 at 27-30; ECF 62 at 18-20, 22-24.

---

[3] Amici for Defendants, the Campaign Legal Center and CREW, propose a different standard: importing the "promote," "attack," "support," or "oppose" standard from campaign finance disclosure law. ECF 61 at 23-25. Amicus Institute for Free Speech correctly explains that this "PASO" standard, applied in the Section 501(c)(4) context, would reach the mere mention of any elected official and introduce additional problems. ECF 64-1 at 18-19. The Court should therefore reject that alternative.

12

Defendants dismiss Freedom Path's evidence of the IRS's longstanding practice by insisting that agency statements cannot "alter the clear meaning of the statute." ECF 63 at 14. That response misses the argument. Freedom Path does not invoke Commissioner Koskinen's public statement, the IRS training manual's 51% definition, or the 40% expedited-review threshold to override the statute. It invokes them for two distinct purposes Defendants never address. First, they confirm the plain reading of the IRS's *own regulation* for the application of Section 501(c)(4). When the IRS's own Commissioner, its own training materials, and its own expedited-review program all converge on 50% as the operative benchmark, that convergence corroborates the threshold for Section 501(c)(4) organizations.

Second, they establish Freedom Path's (and others') reliance interests. Freedom Path structured its activities based on the publicly stated IRS interpretation then in effect. The government's opposition completely ignores reliance interests and fair notice.

The fair-notice problem, alone, fatally undermines Defendants' newfound position. The Supreme Court held in *Christopher v. SmithKline Beecham Corp.* that an agency's "'convenient litigating position'" contradicting its longstanding practice raises constitutional concerns (and of course warrants no deference). 567 U.S. 142, 155-56 (2012) (quoting *Bowen v. Georgetown Univ. Hospital*, 488 U.S. 204, 213 (1988)). Defendants' current proposed standard—under which any "substantial" non-exempt activity disqualifies an organization—was not articulated in any IRS publication, revenue ruling, or official statement at the time Freedom Path acted. ECF 62 at 21-23. Defendants adopted it more than a decade later, in litigation. Due process does not permit that kind of post hoc reinterpretation of standards governing First Amendment-protected speech. *Christopher*, 567 U.S. at 155-56.

13

Defendants likewise ignore congressional acquiescence entirely. Congress enacted Section 527, in 1975, on the express understanding that Section 501(c)(4) organizations could engage in political activity as long as it was not their primary purpose. *See supra* p.6; S. Rep. No. 93-1357, at 7505 (1974). Since then, Congress has amended Section 501 more than forty times without disturbing the IRS's primary-activity standard or the longstanding interpretation of "primarily" that Freedom Path relied upon. ECF 62 at 23-24. This eviscerates the litigation-driven reinterpretation Defendants now advance.

**B. Defendants' proposed "significant activity" test is not required by the statute nor does it provide sufficient notice to prospective Section 501(c)(4) organizations.**

Defendants lean heavily on *Better Business Bureau v. United States*, 326 U.S. 279 (1945), to support their argument that a single "significant" non-exempt purpose is enough to disqualify a prospective Section 501(c)(4) organization. *See* ECF 63 at 10-13. The decision is a poor fit for three independent reasons: congressional acquiescence, inapt caselaw, and constitutional issues. Furthermore, Defendants' proposed standard risks the same vagueness concerns that this Court already recognized. ECF 48 at 47-48.

**1.** *Better Business Bureau* does not control either the statutory or regulatory questions here for at least three reasons.

First, *Better Business Bureau* predates the IRS regulation that has long since been applied to Section 501(c)(4) organizations. The IRS promulgated the Treasury Regulation's "primarily" standard in 1959—fourteen years after the case was decided. And Congress in 1975 enacted the Section 527 framework, which contemplates that Section 501(c)(4) organizations could engage in political campaign intervention so long as it was not their primary activity, but they would be taxed at the same Section 527 rate for those activities. *See supra* p.6; ECF 54-1 at 18-20. The IRS has never applied *Better Business Bureau* as the governing standard for the primary-activity inquiry.

14

ECF 62 at 23-24. Despite these developments and many subsequent amendments to Section 501, Congress has never altered the IRS's longstanding primary-activity test created in 1959. *Washington All. of Tech. Workers v. United States Dep't of Homeland Sec.*, 50 F.4th 164, 191 (D.C. Cir. 2022). Defendants point to nothing suggesting Congress ratified *Better Business Bureau*'s standard.

Second, every circuit court decision Defendants cite applying *Better Business Bureau* to Section 501(c) organizations falls into one of three categories: (1) they were decided before the 1959 regulation, (2) they arise under Section 501(c)(3)'s expressly different statutory text, or (3) they involve commercial or non-speech activity with no First Amendment protection. ECF 62 at 24 n.6. Not one addresses a civic-speech organization under heightened vagueness review.

Third, *Memorial Hermann Accountable Care Organization v. Commissioner*, 120 F.4th 215 (5th Cir. 2024), cannot rescue Defendants' position. Defendants rely on this case as a recent application of the *Better Business Bureau* standard in the Section 501(c)(4) context. *See* ECF 63 at 13. But *Memorial Hermann* involved a healthcare entity, and political speech was not at issue. The Fifth Circuit had no occasion to apply the heightened vagueness review this Court deemed appropriate in this case about speech. ECF 48 at 47-52. Nor did *Memorial Hermann* confront First Amendment fair-notice principles.

Finally, Defendants do not engage with *Municipal Bond Corp. v. Commissioner*, 341 F.2d 683 (8th Cir. 1965), at all. That case squarely rejected the equation of "primary" with "substantial," holding that "primarily" means "principally." *Id.* at 687-89 (citations omitted). That holding tracks how *Malat v. Riddell*, 383 U.S. 569, 571-72 (1966) interpreted "primary." And it directly refutes Defendants' core argument. *Cf.* ECF 59 at 9 (noting that under the *Better Business Bureau* standard "it is not the amount of the activity but whether it is substantial that impacts exempt status," thus,

15

for example, an organization could spend $5 million of its $100 million in expenditures on non-exempt purposes and it would still be considered "substantial").

**2.** Defendants' proposed "significant activity" test is also unconstitutionally vague.

This Court has already held that the IRS's ad hoc enforcement standard is unconstitutionally vague as applied to Freedom Path's First Amendment-protected speech. ECF 48 at 47-48. Defendants' opposition does not engage with that holding. It simply restates the same "substantial non-exempt activity" test and asks the Court to reconsider. ECF 63 at 12-13. The Court should decline. But if any further evidence were needed that Defendants' standard fails vagueness review, their own brief supplies it.

Defendants assert that 10% non-exempt activity is permissible and that 21% is too much. ECF 55-1 at 27-28. They then stop. They offer no principle, formula, or guideline for why 21% is too much—or whether the territory between 11% and 21% is permissible. Any organization reading Defendants' latest brief cannot determine whether 11.1% triggers revocation, or 15%, or 18%. That is the definition of vagueness. And it is precisely the kind of ad hoc, examiner-driven enforcement this Court condemned. ECF 48 at 47-48.

Worse, neither data point is anchored in statutory or regulatory text. Both are borrowed from cases decided on specific facts in entirely different contexts that by happenstance involved those precise numerical figures. *World Family Corp. v. Comm'r*, 81 T.C. 958, 967 n.10 (1983); *Church in Bos. v. Comm'r*, 71 T.C. 102, 108 (1978). Neither case dealt with issue advocacy organizations such as Freedom Path, and both courts expressly disclaimed any intent to set a general rule. *World Family Corp.*, 81 T.C. at 967 n.10; *Church in Bos.*, 71 T.C. at 108. Defendants would convert those case-specific observations into binding thresholds while refusing to explain what governs the space between them. All of this is vague.

16

\*     \*     \*

Freedom Path's proposed 50% threshold solves every problem Defendants' standard creates. It applies the longstanding IRS regulation and agency practice. It derives from the plain meaning of "primarily" as construed by the Supreme Court in *Malat*. It is objective, numerical, and administrable. It eliminates an IRS examiner's discretion. And it is fully consistent with this Court's directive that any replacement standard be "not unconstitutionally vague" and "appropriately rooted in the statutory and regulatory scheme." ECF 48 at 60; *see* ECF 64-1 at 12-13, 15 (noting that a clear 50% threshold is consistent with *Buckley*'s "major purpose" test for "political committees" and is the only standard consistent with 52 U.S.C. § 30111(f)'s mandate of mutual consistency between IRS and FEC rules).

**IV.    Applying the proper standards, Freedom Path's express advocacy is at most 39% of its activities, and Defendants' contrary 78% figure is methodologically unsound.**

**A.    Under any permissible standard, Freedom Path spent at most 39% on express advocacy or its functional equivalent.**

The parties agree that Freedom Path's candidate express advocacy or its functional equivalent totaled $360,748.91. ECF 54-1 at 11. That figure appears identically in the IRS's original calculation, the IRS Appeals Officer's calculation, and Freedom Path's own accounting. *See id.* at 31. Measured against the government's own denominator (the smallest available) that figure represents approximately 39% of total expenditures. Against the IRS Appeals Officer's denominator, it is approximately 34%. Against Freedom Path's, approximately 31%. Under every available calculation, undisputed express advocacy or its functional equivalent stands well below 50%.

In addition, the parties seemingly agree that Freedom Path's *other* expenditures were not either express advocacy or its functional equivalent. That includes Freedom Path's expenditures on the "Three Men" and "Repeal It" advertisements at the center of the parties' dispute. For avoidance of doubt, neither "Three Men" nor "Repeal It" contains express advocacy. Neither mentions

17

an election, a campaign, a political party, or a candidacy. Neither urges anyone to vote for or against anyone. Under *Buckley* and *McConnell*, that absence is dispositive. 424 U.S. at 44; *McConnell v. FEC*, 540 U.S. 93, 126 (2003). Nor are the advertisements the "functional equivalent" of express advocacy. Under *WRTL*, an advertisement is the functional equivalent of express advocacy only if it is "susceptible of no reasonable interpretation other than as an appeal to vote for or against a specific candidate." *WRTL*, 551 U.S. at 470 (controlling plurality op. of Roberts, C.J.). In fact, both advertisements satisfy all four criteria *WRTL* identifies for genuine *issue* advocacy: they focus on a specific piece of legislation, take a position on it, urge public support, and direct viewers to contact their legislators about it. *See* ECF 62 at 25-26. Each advertisement is plainly susceptible of a reasonable interpretation as issue advocacy. Neither can bear the label the government insists on applying.

So Defendants can only assert that 78% of Freedom Path's expenditures were on "political campaign intervention" by characterizing "Three Men" and "Repeal It" as political campaign intervention based on Defendants' vague standard. ECF 63 at 16.[4] That vague standard is essentially the same multi-factor, facts-and-circumstances methodology this Court already declared unconstitutionally vague. *See supra* pp.10-11; ECF 48 at 49; ECF 55-1 at 19-26. This Court held that test unconstitutionally vague as applied to Freedom Path's communications because it offered no objective, workable criteria. ECF 48 at 50. Defendants' opposition does not answer that holding, and its proposed standard continues to suffer the same vagueness problem.

---

[4] Approximately $319,400 of the government's "political campaign intervention" total—nearly 31% of its own denominator—flows entirely from those two advertisements. ECF 62 at 28; ECF 54-1 at 9.

18

If this Court concludes that the "Three Men" and "Repeal It" advertisements are not "political campaign intervention" because they are neither express advocacy nor its functional equivalent, Defendants' own figures fall well below 50% under any calculation the Court could apply.

**B. The Federal Election Commission declining to classify Freedom Path as a "political committee" under FECA powerfully corroborates that its activities were primarily issue advocacy—not political campaign intervention.**

Defendants also fail to address the Federal Election Commission's ("FEC") treatment of Freedom Path. The FEC declining to classify Freedom Path as a "political committee" under FECA contradicts Defendants' claim that 78% of Freedom Path's activities constituted political campaign intervention. *See* 52 U.S.C. § 30101(4).

The record before the FEC was substantial. Freedom Path filed agency-required reports of both its independent expenditures and its FECA electioneering communications, placing the FEC on full notice of everything Freedom Path did. ECF 64-1 at 11. In other words, the agency with primary constitutional expertise in distinguishing issue advocacy from electoral activity reviewed Freedom Path's conduct and did not act. Amicus Institute for Free Speech explains why that silence carries special weight: Congress created the FEC specifically to classify predominantly political organizations, vesting it with the specialized knowledge and structural safeguards the IRS lacks. *Id.* at 4, 10. FECA reinforces the point. The IRS is expressly barred from counting FECA electioneering communications in determining an organization's tax status. 52 U.S.C. § 30104(f)(7). Only the FEC may make that determination—and only for the specific FECA campaign-finance mandates separate from the Internal Revenue Code. ECF 64-1 at 11.

## CONCLUSION

For these reasons, the Court should grant Freedom Path's Renewed Motion for Summary Judgment, deny Defendants' Renewed Cross-Motion for Summary Judgment, and declare that Freedom Path is entitled to 26 U.S.C. § 501(c)(4) tax-exempt status.

Dated: April 24, 2026                          Respectfully submitted,

                                               */s/ Scott A. Keller*

Chris K. Gober                                 Scott A. Keller (D.C. Bar # 1632053)
D.C. Bar No. 975981                            Jeremy Evan Maltz (D.C. Bar # 155451)
Lex Politica PLLC                              LEHOTSKY KELLER COHN LLP
611 Pennsylvania Ave SE #353                   200 Massachusetts Ave. NW
Washington, DC 20003                           Washington, DC 20001
(512) 354-1783                                 (512) 693-8350
cgober@lexpolitica.com                         scott@lkcfirm.com


*Counsel for Plaintiff Freedom Path, Inc.*

20